UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

In re:                              Chapter 13

RUDOLF J.O. ERNST and ANGELIKA L.   BKR Case No. 04-12291 (JMP)
ERNST,

                        Debtors.    Docket No.: 07-cv-04840 (JGK)
------------------------------------X


### APPELLANT'S BRIEF


CAREY & ASSOCIATES LLC
Attorneys for Michael Q. Carey,
d/b/a Carey & Associates
521 Fifth Avenue, Suite 3300
New York, NY 10175-3399
Tel: 212-758-0076
Fax: 212-758-0069

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................ III

  A.   CASES ....................................................... III

  B.   STATUTES ...................................................... V

PRELIMINARY STATEMENT ............................................ 1

JURISDICTIONAL STATEMENT ......................................... 1

STATEMENT OF ISSUES FOR REVIEW ................................... 2

PROCEDURAL FACTS ................................................. 2

  A.   DEBTORS FAILED TO PAY CAREY FOR LEGAL SERVICES ............... 2

  B.   CAREY SUED DEBTORS IN SUPREME COURT, NEW YORK COUNTY ........ 3

  C.   THE SUPREME COURT GRANTED CAREY'S MOTION FOR SUMMARY
      JUDGMENT ................................................... 3

      1.   EXTRADITION JUDGMENT ................................... 3

      2.   COLLECTION JUDGMENT .................................... 4

  D.   HON. CORNELIUS BLACKSHEAR DISALLOWED CAREY'S CLAIM TO THE
      COLLECTION JUDGMENT ........................................ 4

  E.   THE DISTRICT COURT REVERSED THE BANKRUPTCY COURT AND
      REMANDED FOR A HEARING CAREY'S CLAIM TO THE COLLECTION
      JUDGMENT ................................................... 6

  F.   THE BANKRUPTCY COURT GRANTED DEBTORS' MOTION FOR SUMMARY
      JUDGMENT ................................................... 6

WEEN v. DOW ..................................................... 7

  A.   WEEN – PROCEEDINGS BEFORE THE SUPREME COURT ................. 7

  B.   WEEN – PROCEEDINGS BEFORE THE APPELLATE DIVISION ............ 8

  C.   WEEN – PROCEEDINGS BEFORE THE SUPREME COURT ON REMAND ....... 9

STANDARD OF REVIEW .............................................. 9

ARGUMENT ....................................................... 10

POINT I ........................................................ 10

THE COURT ERRED IN CONCLUDING THAT CAREY'S COLLECTION FEES
CLAUSE WAS UNENFORCEABLE ....................................... 10

  A.   A NON-RECIPROCAL CONTRACT PROVISION THAT PERMITS AN
      ATTORNEY TO SUE FOR COLLECTION FEES IS ENFORCEABLE UNDER
      NEW YORK LAW .............................................. 11

  B.   IT WAS ERROR TO RELY ON WEEN AS DISALLOWING ALL COLLECTION
      FEES CLAUSES AS UNENFORCEABLE *PER SE* ..................... 12

      1.   IN THE MATTER OF COOPERMAN .............................. 12

      2.    WEEN V. DOW ............................................... 14

      3.    LUSTIG V. HORN AND GRUBER V. ERIKSON ..................... 19

      4.    THE BANKRUPTCY COURT ERRED IN FAILING TO ADDRESS
            CAREY'S CLAIM AS *SUI GENERIS* ............................ 25

POINT II ....................................................... 28

THE BANKRUPTCY COURT ERRED IN FINDING THAT *RES JUDICATA* DID NOT
BAR DEBTORS' MOTION FOR SUMMARY JUDGMENT ........................ 28

  A.    *RES JUDICATA* BARS DEBTORS FROM RELITIGATING THE FINAL
        SUPREME COURT DECISION ..................................... 28

  B.    THE BANKRUPTCY COURT ERRED IN APPLYING 11 U.S.C. § 502(b)
        TO DEFEAT CAREY'S *RES JUDICATA* ARGUMENT ..................... 33

  C.    JUDGE BLACKSHEAR'S DENIAL OF THE CLAIM FOR COLLECTION FEES
        IS NOT THE LAW-OF-THE-CASE ................................. 37

CONCLUSION ..................................................... 39

# TABLE OF AUTHORITIES

**A.    CASES**

ALYESKA PIPELINE SERVICE CO. V. THE WILDERNESS SOCIETY, 421
    U.S. 240, 95 S. CT. 1612 (1975). ............................ 11

ARCINIAGA V. GENERAL MOTORS CORP., 460 F.3D 231 (2D CIR. 2006) ... 35

CUTNER & ASSOC., P.C. V. KANBAR, 1998 WL 13849 (S.D.N.Y. JAN.
    16, 1998), AMENDED ON RECONSIDERATION BY 1998 WL 104609
    (S.D.N.Y. FEB. 4, 1998), AMENDED AND SUPERCEDED BY 1998 WL
    104612 (S.D.N.Y. FEB. 4, 1998) .......................... 12,18

FEDERAL DEPOSIT INSURANCE CORP. V. KASSEL, 72 A.D.2D 787, 421
    N.Y.S.2D 609 (APP. DIV. 2D DEP'T 1979) ................... 12,18

GRUBER & COLABELLA, P.A. V. ERIKSON, 345 N.J.SUPER 248, 784
    A.2D 758 (N.J. SUPER. CT. LAW DIV. 2001) .............. 19,22-25

HAVELL V. ISLAM, 301 A.D.2D 339, 751 N.Y.S.2D 449 (APP.DIV. 1ST
    DEPT. 2002) ................................................ 18

HENNESSY V. CEMENT AND CONCRETE WORKER'S UNION LOCAL 18A, OF
    THE LABORER'S INT'L UNION OF NORTH AMERICA, AFL-CIO, 963
    F.SUPP. 334 (S.D.N.Y. 1997) ............................... 29

HOOPER ASSOCIATES, LTD. V. AGS COMPUTERS, INC., 74 N.Y.2D 487,
    548 N.E.2D 903 (N.Y. 1989) ................................ 12

HORMEL FOODS CORP. V. JIM HENSON PRODUCTIONS, INC., 73 F.3D 497
    (2D CIR. 1996) ............................................ 17

HORNE V. COUGHLIN, 191 F.3D 244 (2D CIR. 1999) ................... 17

HRYCAK V. KIERNAN, 367 N.J. SUPER. 237, 842 A.2D 313 (N.J.
    SUPER. CT. 2004) ..................................... 12, 23-25

HUNT V. SHARP, 85 N.Y.2D 883, 649 N.E.2D 1201, 626 N.Y.S.2D 57,
    (N.Y. 1995) ............................................... 11

INDUSTRIAL EQUIPMENT CREDIT CORP. V. GREEN, 92 A.D.2D 838, 460
    N.Y.S.2D 337 (APP. DIV. 1ST DEP'T 1983), AFFIRMED BY 62
    N.Y.2D 903, 467 N.E.2D 525 (N.Y. 1984) .................... 12

IN RE BETHLEHEM STEEL CORP., 479 F.3D 167 (2D CIR. 2007) ......... 9

IN RE BLACKWOOD ASSOCIATES, L.P., 153 F.3D 61 (2D CIR. 1998) ..... 30

IN RE CLUFF, 313 B.R. 323 (BANKR.D.UTAH 2004) ................. 31N14

IN RE HALPERIN, 215 B.R. 321 (BANKR. E.D.N.Y. 1997) ............. 29

IN RE MATHIASON, 16 F.3D 234 (8TH CIR. 1994) .................... 32

IN RE PARKER, 308 B.R. 129 (BANKR. CONN. 2004) ................. 36

IN RE SHAFFNER, 320 B.R. 870 (BANKR.W.D.MICH. 2005) ........... 31N14

IN RE TAYLOR, 289 B.R. 379 (N.D.IND. 2003) .................... 31N14

IN RE UNITED STATES LINES, 199 B.R. 476 (BANKR. S.D.N.Y. 1996) ... 31

JOHNSON V. WATKINS, 101 F.3D 792 (2D CIR. 1996) .................. 32

KELLERAN V. ANDRIJEVIC, 825 F.2D 692 (2D CIR. 1987) ..... 29,31,32,39

KERMAN V. CITY OF NEW YORK, 374 F.3D 93 (2D CIR. 2004) ........... 39

KOHN V. LEAVITT-BERNER TANNING CORP., 157 B.R. 523 (N.D.N.Y.
        1993) ................................................... 36,39

KRUMME V. WESTPOINT STEVENS INC., 79 F.SUPP.2D 297 (S.D.N.Y.
        1999) ...................................................... 11

LEVINE V. INFIDELITY, INC., 2 A.D.3D 691, 770 N.Y.S.2D 83 (APP.
        DIV. 2D DEP'T 2003) ........................................ 12

LUSTIG V. HORN, 315 ILL.APP.3D 319, 732 N.E.2D 613 (ILL. APP.
        CT. 1ST DIST. 2000) ...................................... 19-21

MANHATTAN TELECOMMUNICATIONS CORP. V. BEST PAYPHONES, INC., 299
        A.D.2D 178, 749 N.Y.S.2D 246 (APP. DIV. 1ST DEP'T 2002) ...... 32

MARJAN INTERNATIONAL CORP. V. AZARIAN, 2000 WL 744120 (S.D.N.Y.
        2000) ...................................................... 11

MATTER OF COOPERMAN, 83 N.Y.2D 465, 611 N.Y.S.2D 465 (1994) .. PASSIM

MIGRA V. WARREN CITY SCHOOL DIST., 465 U.S. 75, 104 S.CT. 892,
        79 L.ED.2D 56 (1984) ....................................... 32

MONAHAN V. NEW YORK CITY DEP'T OF CORRECTIONS, 214 F.3D 275 (2D
        CIR. 2000) ............................................... 28,32

NATIONAL BANK OF NORTH AMERICA V. ARTHUR R. SMITH MECHANICAL
        CORP., 74 A.D.2D 600, 424 N.Y.S.2D 512 (APP. DIV. 2D DEP'T
        1980) ...................................................... 12

OLIN CORPORATION V. CONSOLIDATED ALUMINUM CORPORATION, 5 F.3D
        10 (2D CIR. 1993) ........................................ 18-19

POZDNIAKOV V. IMMIGRATION AND NATURALIZATION SERVICE, 354 F.3D
        176 (2D CIR. 2003) ......................................... 30

THOMPSON & CO., LLP V. LUCILLE MURRAY CHILD DEVELOPMENT CENTER,
        INC., 13 A.D.3D 120, 785 N.Y.S.2D 690 (APP. DIV. 1ST DEP'T
        2004) ...................................................... 32

TRAVELERS CASUALTY & SURETY CO. OF AMERICA V. PACIFIC GAS &
        ELECTRIC CO., 127 S. CT. 1199 (2007) ..................... 31N14

UNITED STATES V. NUSRATY, 867 F.2D 759 (2D CIR. 1989) ............ 27

WEEN V. DOW, 35 A.D.3D 58, 802 N.Y.S.2D 257 (APP. DIV. 1ST DEP'T
        2006) ................................................... PASSIM

**B.    STATUTES**

11 U.S.C. § 502 ...................................................... 33

11 U.S.C. § 502(b) .............................................. 33–35

11 U.S.C. § 502(b)(1) .......................................... 33,36

11 U.S.C. § 502(e). ............................................ 34–35

11 U.S.C. § 502(f). ............................................ 34–35

11 U.S.C. § 502(g). ............................................ 34–35

11 U.S.C. § 502(h). ............................................ 34–35

11 U.S.C. § 502(i). ............................................ 34–35

28 U.S.C. § 158(a) ................................................... 1

28 U.S.C. § 1738. ................................................... 32

RULE 8013, FEDERAL RULES OF BANKRUPTCY PROCEDURE
    ("**FED.R.BANKR.P.**") .......................................... 9

RULE 9076-1, LOCAL BANKRUPTCY RULES, S.D.N.Y. ................. 38N15

RULE 52(a), FEDERAL RULES OF CIVIL PROCEDURE ("**FED.R.CIV.P.**") ..... 9

## PRELIMINARY STATEMENT

This is an appeal by creditor Michael Q. Carey d/b/a Carey & Associates ("**Carey**") from the Order of the Honorable James M. Peck, United States Bankruptcy Judge ("**Bankruptcy Court**"), granting debtors' motion for summary judgment, entered in this action on the 27th day of April 2007 ("**MSJ Order**"). (Appx Ex 8).[1]

## JURISDICTIONAL STATEMENT

Carey timely filed a Notice of Appeal of the MSJ Order on May 4, 2007.

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).

---

[1]     Citations preceded by "**Appx Ex**" refer to the Exhibits in the Appendix to Appellant's Brief, dated July 9, 2007. Each document included in the Appendix was listed on Appellant's Record on Appeal to be transmitted by the Bankruptcy Court to the District Court.
        Citations preceded by ("**R-x**") refer to the number of the document in appellant's record on appeal. Only partial copies and excerpts of the Record on Appeal are included in the Appendix, as indicated in the Table of Contents to the Appendix.
        Citations preceded by "**MSJ Motion**" refer to the memorandum of law in support of debtors' motion for summary judgment, dated January 17, 2007.(Appx Ex 5).
        Citations preceded by "**MSJ Opp**" refer to Carey's memorandum of law in opposition to debtors' motion for summary judgment, dated January 29, 2007.(Appx Ex 6).
        Citations preceded by "**MSJ SurReply**" refer to Carey's sur-reply memorandum of law in opposition to debtors' motion for summary judgment, dated April 13, 2007.(Appx Ex 7).
        Citations preceded by "**Ween Order**" refer to the pages of the decision of the Supreme Court, later decided on appeal in <u>Ween v. Dow</u>, 35 A.D.3d 58, 802 N.Y.S.2d 257 (App. Div. 1st Dep't 2006). (Appx Ex 10)
        Citations preceded by "**MSJ Order**" refer to the decision of the Bankruptcy Court (Hon. James M. Peck), dated April 27, 2007, granting debtors' motion for summary judgment. (Appx Ex 8).

## STATEMENT OF ISSUES FOR REVIEW

1.    Did the Court err in finding that the holding in Ween v.
Dow, 35 A.D.3d 58, 802 N.Y.S.2d 257 (App. Div. 1st Dep't 2006)
required it to find, as a matter of public policy, that the non-
reciprocal collection fee clause in Carey's retainer agreement
was *per se* unenforceable? (Point I, infra).

2.    Did the Court err in finding that *res judicata* did not bar
debtors from relitgating a final Supreme Court decision in
Carey's favor that held debtors liable in contract to pay
Carey's collection fees? (Point II, infra).

## PROCEDURAL FACTS

### A.   DEBTORS FAILED TO PAY CAREY FOR LEGAL SERVICES

Carey represented debtor Rudolf J.O. Ernst ("**Dr. Ernst**") in
an extradition matter in the Southern District of New York, from
January through July 1998 ("**Extradition Matter**").

Debtors each signed a retainer agreement with Carey, dated
January 5, 1998 ("**Retainer Agreement**") (Appx Ex 1), but failed
to pay Carey for approximately $72,000 owed for disbursements
and for legal services Carey provided during the Extradition
Matter.

After a hearing on August 12, 1998, by Order dated August
17, 1998, the court granted Carey's unopposed motion for leave
to withdraw as counsel for Dr. Ernst for non-payment of his
bills. (R-4: See Timesheets, Exhibit J to Carey's Proof of

Claim, dated and filed July 27, 2004 (Claim No. 9-1)).

**B.   CAREY SUED DEBTORS IN SUPREME COURT, NEW YORK COUNTY**

In August 1998, Carey commenced suit against debtors in the Supreme Court for the State of New York, County of New York (**"Supreme Court"**) for non-payment of his fees and disbursements. The case is styled <u>Carey & Associates v. Rudolf Johann Othmar Ernst, Angelika Ernst, and Rudi Ernst, Jr.</u>, Index No. 604000. (**"Carey Complaint"**).

**C.   THE SUPREME COURT GRANTED CAREY'S MOTION FOR SUMMARY JUDGMENT**

In June 2003, Carey moved for summary judgment on all four causes of action in the Carey Complaint, and for summary judgment dismissing debtors' counterclaims and affirmative defenses. Approximately nine months later, the Supreme Court granted Carey's motion for summary judgment, for breach of contract and for an account stated, by order dated March 19, 2004 (filed March 26, 2004) (**"Carey Judgment"**).[2] (Appx Ex 2).

**1.   Extradition Judgment**

The Supreme Court granted Carey summary judgment in the amount of $72,274.14, on causes of action for breach of contract and account stated, for unpaid fees charged to Dr. Ernst in the

---

[2]     Debtors cross-moved for summary judgment. Their motion was denied. Carey's *quantum meruit* claim was dismissed as required since the Supreme Court  granted Carey's claim for breach of contract.

Rudi Ernst Jr. (**"REJ"**) moved to dismiss the cause of action against him for breach of oral contract. The Supreme Court granted his cross-motion. (Appx Ex 2 p 3).

Extradition Matter, plus contractual interest at the rate of 12%
per annum ("**Extradition Judgment**").

### 2.    Collection Judgment

The Supreme Court also granted Carey summary judgment on
his cause of action for breach of contract finding debtors
liable, pursuant to Carey's Retainer Agreement, with respect to
his claim for attorneys' fees and expenses ("**Collection Fees**")
incurred in collecting the Extradition Judgment. ("**Collection
Judgment**"). However, the Supreme Court did not determine the
amount of the Collection Judgment. Instead, the Supreme Court,
on a date to be scheduled afterwards, ordered a hearing to
assess the amount of such damages. (Appx Ex 2).

Debtors never appealed the Carey Judgment. Instead, they
filed a petition in bankruptcy on April 5, 2004, 10 days after
the Supreme Court decision was filed, before such hearing was
scheduled to assess the allowable amount of Carey's claim. (R-
1).[3]

### D.    HON. CORNELIUS BLACKSHEAR DISALLOWED CAREY'S CLAIM TO THE COLLECTION JUDGMENT

On July 27, 2004, Carey filed a proof of claim in the
amount of $335,319.20. (R-4). This amount included the unpaid
fees in the Extradition Judgment in the amount of approximately

---

[3] The matter is still pending in Supreme Court, stayed by Debtors filing their
bankruptcy Petition. (R-1). Sustaining debtors' objection, the Bankruptcy
Court denied Carey's application to lift the stay and to let the Supreme
Court determine the reasonable amount of Carey's claim. (R-12).

$72,274.14, disbursements of $15,951.77, and $195,893.50 for the Collection Fees that would be presented to the Bankruptcy Court for a determination of reasonableness and necessity. It also included interest on the amount of the Extradition Judgment and the Collection Fees in the approximate amount of $51,199.79.

At the direction of the Bankruptcy Court, in December 2004, Carey also filed a fee application in the amount of $205,707.78, the amount claimed for Collection Fees and disbursements. Carey requested, but did not include a calculation of, contractual interest on his Collection Fees and disbursements at the rate of 12% per annum.

Debtors objected to the entirety of Carey's proof of claim and fee application. (R-7,17).

At a conference on January 20, 2005, Hon. Cornelius Blackshear ordered a hearing to determine the reasonable and necessary amount of the Collection Fees. However, on the date scheduled for the hearing, the court ruled that it would not conduct a hearing and rendered a decision. By memorandum opinion dated February 22, 2005 ("**Blackshear Opinion**"), the Bankruptcy Court approved Carey's proof of claim in the full amount of the Extradition Judgment, approximately $72,000, plus disallowed Carey's claim for interest to the extent it exceeded 9%. (Appx

Ex 3).[4]

The Bankruptcy Court disallowed Carey's claim for Collection Fees in its entirety. (Appx Ex 3). Carey appealed.

**E.    THE DISTRICT COURT REVERSED THE BANKRUPTCY COURT AND REMANDED FOR A HEARING CAREY'S CLAIM TO THE COLLECTION JUDGMENT**

By order dated November 8, 2005, the United States District Court for the Southern District of New York (**"District Court"**) affirmed the award of interest at 9% per annum on the Extradition Judgment, but it reversed the Bankruptcy Court's disallowance of Carey's claim for Collection Judgment (**"Patterson Decision"**). (Appx Ex 4). The District Court held that the record did not support the Bankruptcy Court's denial of a hearing on Carey's claim for Collection Fees. It reversed and remanded the matter to the Bankruptcy Court for a hearing to determine what Collection Fees should be allowed. The hearing has never been held.

**F.    THE BANKRUPTCY COURT GRANTED DEBTORS' MOTION FOR SUMMARY JUDGMENT**

By motion dated January 17, 2007, debtors moved for summary judgment (**"Ernst Motion"**). Debtors sought entry of an order disallowing, dismissing and expunging Carey's Amended Proof of

---

[4]    The Bankruptcy Court awarded Carey interest at 9%, not at the 12% contractual rate awarded by the Supreme Court as specified in the Retainer Agreement. The interest allowed, $37,690.96, covered the period from July 28, 1998 through the filing of the bankruptcy petition. (Appx Ex 3). Under debtors' current Chapter 13 Plan, Carey is being paid 20.68% of $109,965.10 (or approximately $22,735 over the life of the Chapter 13 plan). (R-3).

Claim, filed October 16, 2006, to the extent of the Collection Judgment. (Appx Ex 5).

Debtors' relied on <u>Ween v. Dow</u>, 35 A.D.3d 58, 822 N.Y.S.2d 257 (N.Y.A.D. 1st Dep't Oct. 5, 2006). Debtors argued that Ween held that the clause in Carey's retainer agreement that required debtors to pay the costs Carey incurred to obtain the Extradition Judgment was unenforceable. (Appx Ex 5).

The Bankruptcy Court adopted debtors' argument and, relying on <u>Ween</u>, granted summary judgment denying Carey's claim on the Collection Judgment. (**"MSJ Order"**). Carey now appeals that decision.

### WEEN v. DOW

**A.    <u>WEEN</u> – PROCEEDINGS BEFORE THE SUPREME COURT**

In <u>Ween</u>, the plaintiff-attorney, Ween, (**"Attorney"**), sued Dow, his former client (**"Client"**), for Collection Fees.[5] Attorney moved for partial summary judgment on the second cause of action for account stated and on the fourth cause of action, to recover Collection Fees against Client, pursuant to the provisions of a signed retainer agreement. (Appx Ex 10: Ween Order p 4).

Client cross-moved for partial summary judgment to dismiss the fourth cause of action on the "fees on fees claim as against public policy." (Appx Ex 10: Ween Order p 4).

---

[5]    The defined term "Collection Fees" refers to the same categories of attorney fees and expenses that form the basis of the claims in this case as well as in <u>Ween</u>.

The Supreme Court denied Attorney's motion for partial summary judgment on an account stated, finding Client's objections raised issues of fact. (Appx Ex 10: Ween Order p 5-6). It denied attorney's motion for Collection Costs as "premature", noting that a) Attorney "had not yet shown that he is entitled to recover at all" and b) Client did not offer "<u>any evidence that New York frowns upon such clauses in attorney collection cases</u>." (Appx Ex 10: Ween Order p 6-7) (emphasis added).

Attorney appealed. Client cross-appealed. <u>Ween</u>, 822 N.Y.S.2d at 260.

**B.    <u>WEEN</u> – PROCEEDINGS BEFORE THE APPELLATE DIVISION**

The Appellate Division, First Department, affirmed the Supreme Court's denial of summary judgment to Attorney on his claim for an account stated.

On Client's cross-appeal, the Appellate Division dismissed Attorney's fourth cause of action for Collection Fees and remanded the case to the Supreme Court. It stated that, given the facts in the case, a "…provision, which permits the recovery of attorneys' fees by the attorney should he prevail in a collection action, without a reciprocal allowance for attorneys' fees should the client prevail, [is] <u>fundamentally unfair and unreasonable</u>." <u>Ween</u>, 822 N.Y.S.2d at 261 (emphasis added).

**C.**    <u>**WEEN**</u> **– PROCEEDINGS BEFORE THE SUPREME COURT ON REMAND**

Following remand, the matter was settled on or around April 11, 2007.

## STANDARD OF REVIEW

Rule 8013, Federal Rules of Bankruptcy Procedure (**"Fed.R.Bankr.P."**) states:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. (emphasis added).

<u>See</u> <u>also</u> Rule 52(a), Federal Rules of Civil Procedure (**"Fed.R.Civ.P."**); <u>In re Bethlehem Steel Corp.</u>, 479 F.3d 167, 172 (2d Cir. 2007).

Conclusions of law of the Bankruptcy Court are subject to *de novo* review. <u>Bethlehem Steel</u>, 479 F.3d at 172.

**ARGUMENT**

**POINT I**

**THE COURT ERRED IN CONCLUDING THAT CAREY'S COLLECTION FEES CLAUSE WAS UNENFORCEABLE**

The Bankruptcy Court interpreted <u>Ween</u> with unquestioned

confidence:

> The Appellate Division has delivered a loud and clear message. Lack of mutuality in any attorney's retainer agreement is fatal to recovery.
>
> ***
>
> The Court in *Ween* declared emphatically that an identical retainer provision to the one used by Carey was unenforceable; in effect, the provision was intended to contractually reverse the American Rule for the sole benefit of the lawyer and to the potential detriment of the client.[6] As such, the Appellate Division has recognized that this term of a retainer agreement, ***as a matter of public policy***, is not binding and legally enforceable. (Appx Ex 8: MSJ Order p 16-19) (emphasis added).[7]

In denying Carey's claim for Collection Fees, the

Bankruptcy Court held as a matter of law:

---

[6]    Carey's retainer agreement stated:

> If we take any action to … collect the amounts payable under this agreement, [debtors] agree to pay for our efforts and for those of any attorney we hire, at the same rates set forth in this agreement or charged to us by outside counsel, and for the costs and disbursements related thereto. (Appx Ex 1: Retainer p 5).

[7]    Although Client argued that the Collection Fees clause was "void as against public policy…", <u>Ween</u>, 822 N.Y.S.2d at 261, the Appellate Division did not conclude that the clause itself was void as against public policy.

> Carey is not entitled under currently
> applicable New York law as interpreted
> in *Ween* to collect attorneys' fees from
> [debtors] in a New York State court or
> in this Court, because the agreement
> regarding payment of those fees never
> included the essential reciprocity to
> make the provision enforceable. (Appx
> Ex 8: MSJ Order p 19).

The Bankruptcy Court misinterpreted <u>Ween</u>.

**A.    A NON-RECIPROCAL CONTRACT PROVISION THAT PERMITS AN
ATTORNEY TO SUE FOR COLLECTION FEES IS ENFORCEABLE UNDER
NEW YORK LAW**

Since the 1700's, courts in the United States have

permitted parties to contract for the payment of attorneys' fees

by the non-prevailing party. <u>Alyeska Pipeline Service Co. v. The</u>

<u>Wilderness Society</u>, 421 U.S. 240, 95 S. Ct. 1612 (1975). <u>See</u>

<u>also</u> <u>Hunt v. Sharp</u>, 85 N.Y.2d 883, 885, 649 N.E.2d 1201, 1202,

626 N.Y.S.2d 57, 58 (N.Y. 1995).

In all cases other than where the attorney has sought to

impose a penalty or an unreasonable charge on his client, New

York Courts will award Collection Fees when there is proof that

a client has entered into an enforceable contract to pay such

fees, even where the contract does not provide a client with a

reciprocal right if he prevails, provided the Court finds that

the attorneys' services were reasonable and necessary. <u>Marjan</u>

<u>International Corp. v. Azarian</u>, 2000 WL 744120 at *2 (S.D.N.Y.

2000) (guarantee, non-reciprocal); <u>Krumme v. Westpoint Stevens</u>

<u>Inc.</u>, 79 F.Supp.2d 297, 313 (S.D.N.Y. 1999) (insurance, non-

reciprocal); <u>Cutner & Assoc., P.C. v. Kanbar</u>, 1998 WL 13849 (S.D.N.Y. Jan. 16, 1998), <u>amended on reconsideration by</u> 1998 WL 104609 (S.D.N.Y. Feb. 4, 1998), <u>amended and superceded by</u> 1998 WL 104612 (S.D.N.Y. Feb. 4, 1998)(attorney retainer, non-reciprocal). <u>Accord</u> <u>Hrycak v. Kiernan</u>, 367 N.J. Super. 237, 842 A.2d 313 (N.J. Super. Ct. 2004)(attorney retainer, non-reciprocal). <u>See also</u> <u>Hooper Associates, Ltd. v. AGS Computers, Inc.</u>, 74 N.Y.2d 487, 491-492, 548 N.E.2d 903, 904-905 (N.Y. 1989)(indemnification, non-reciprocal); <u>Industrial Equipment Credit Corp. v. Green</u>, 92 A.D.2d 838, 838, 460 N.Y.S.2d 337, 338 (App. Div. 1st Dep't 1983), <u>affirmed by</u> 62 N.Y.2d 903, 467 N.E.2d 525 (N.Y. 1984)(commercial equipment lease, non-reciprocal); <u>Levine v. Infidelity, Inc.</u>, 2 A.D.3d 691, 692-693, 770 N.Y.S.2d 83, 84 (App. Div. 2d Dep't 2003) (mortgage note, non-reciprocal); <u>National Bank of North America v. Arthur R. Smith Mechanical Corp.</u>, 74 A.D.2d 600, 600, 424 N.Y.S.2d 512, 513 (App. Div. 2d Dep't 1980) (promissory note/guaranty, non-reciprocal); <u>Federal Deposit Insurance Corp. v. Kassel</u>, 72 A.D.2d 787, 788, 421 N.Y.S.2d 609, 611 (App. Div. 2d Dep't 1979)(commercial equipment lease, non-reciprocal).

**B.    IT WAS ERROR TO RELY ON <u>WEEN</u> AS DISALLOWING ALL COLLECTION FEES CLAUSES AS UNENFORCEABLE *PER SE***

**1.    <u>In The Matter Of Cooperman</u>**

The Appellate Division in <u>Ween</u> relied extensively on the decision of the New York Court of Appeals in <u>In The Matter of</u>

<u>Cooperman</u>, 83 N.Y.2d 465, 611 N.Y.S.2d 465 (1994).

In <u>Cooperman</u>, the Court of Appeals held non-refundable retainers paid pursuant to written agreements were unenforceable and void as a matter of public policy and in violation of the Code of Professional Responsibility. <u>Cooperman</u>, 83 N.Y.2d at 473-74, 611 N.Y.S.2d at 468-469. The attorney who demanded the fees had been discharged in three cases but refused to refund any portion of the fee despite having been discharged in less than one month in two of the cases; and despite refusing to give his former client in the third matter an itemized bill for services rendered. <u>Cooperman</u>, 83 N.Y.2d at 470, 611 N.Y.S.2d at 466-67.

The Court of Appeals found non-refundable fee agreements "compromise the client's absolute right to terminate the unique fiduciary attorney-client relationship." <u>Cooperman</u>, 83 N.Y.2d at 471, 611 N.Y.S.2d 467. "[P]ublic policy recognizes a client's right to terminate the attorney-client relationship at any time with or without cause." <u>Cooperman</u>, 83 N.Y.2d at 472, 611 N.Y.S.2d at 468 (citations omitted). The court emphasized the attorney's duty to honor the client's interests over the lawyer's, <u>Cooperman</u>, 83 N.Y.2d at 472, 611 N.Y.S.2d at 467 (citations omitted), and stated "[t]o the public and clients, few features could be more paramount than the fee-the costs of legal services." <u>Id.</u>

The Court of Appeals held that:

> We hold that the use of a special
> nonrefundable retainer fee agreement
> clashes with public policy because it
> inappropriately compromises <u>the right
> to sever the fiduciary services
> relationship with the lawyer</u>. [Such
> agreements] diminish the core of the
> fiduciary relationship by substantially
> altering and economically chilling the
> client's unbridled prerogative to walk
> away from the lawyer. To answer that
> the client can technically still
> terminate misses the reality of the
> <u>economic coercion</u> that pervades such
> matters. If special nonrefundable
> retainers are allowed to flourish,
> clients would be relegated to <u>hostage
> status</u> in an unwanted fiduciary
> relationship -- an utter anomaly. Such
> circumstances would <u>impose a penalty</u> on
> a client for daring to invoke a hollow
> right to discharge. <u>Cooperman</u>, 83
> N.Y.2d at 473-74, 611 N.Y.S.2d at 468-
> 69 (emphasis added).

The Bankruptcy Court in this case made no findings of fact
that Carey's actions, given the non-reciprocal Collection Fees
clause in the retainer agreement he had with debtors, impeded
debtors' right to terminate him as the attorney of record in the
extradition proceeding, amounted to economic coercion, made
debtors hostage to him, or imposed any form of penalty on them.

   2.   **Ween v. Dow**

The Bankruptcy Court relied exclusively on <u>Ween</u> to support
its holding. <u>Ween</u>, like <u>Cooperman</u>, is about attorney misconduct.
The Appellate Division found that Attorney exploited the
confidence Client had in him. It did not find that Collection

Fee clauses were void as against public policy, the basis for
disallowing the non-refundable fee clause in Cooperman. However,
on the basis of Attorney's conduct, it found that enforcing the
Collection Fees clause, given the facts as they existed in Ween,
would be unfair and unreasonable.[8]

The Appellate Division applied the reasoning in Cooperman
to assess Attorney's conduct. Its holding rests in part on its
finding that the Attorney misrepresented the law to Client
regarding client's right to choose other counsel:

> Attorney did not rebut Client's claim
> that he advised her that she could not
> hire another attorney until he was paid
> in full. Ween, 822 N.Y.S.2d at 260.

Following Cooperman, the Appellate Division found
Attorney's actions and misrepresentations interfered with

---

[8]    Apparently to avoid having to establish that his fees for services on
behalf of Client were reasonable and necessary, Attorney moved exclusively on
his account stated cause of action. The Supreme Court noted, on an account
stated theory, it is "…generally not necessary to establish the
reasonableness of the attorney's fees." (Appx Ex 10: Ween Order p 4).
    The Supreme Court denied Attorney's motion for summary judgment on an
account stated, finding sufficient evidence of oral objections to rebut any
inference of an implied agreement to pay. (Appx Ex 10: Ween Order p 5, 6).
    Attorney also moved for summary judgment against Client for his
Collection Fees. Attorney's retainer agreement provided he could recover
Collection Fees "[I]f client fails to pay for charges due under this
agreement and the law firm takes legal action and is awarded such charges…."
Ween, 822 N.Y.S.2d at 259.
    Neither the Supreme Court nor the Appellate Division had an opportunity
to weigh the validity of the retainer agreement in Ween because Attorney did
not move for summary judgment for breach of contract.
    The Appellate Division did not expressly address the Supreme Court's
finding in Ween that Attorney had not shown he was entitled at all to
Collection Fees or attorneys' fees by contract. (Appx Ex 10: Ween Order p 6).
The Appellate Division ruled on the assumption that Attorney might later
prove there was such an agreement. Ween, 822 N.Y.S.2d at 261.

Client's "unbridled prerogative to walk away from the lawyer,"
having a material impact on the issue of the Client's costs for
the Attorney's services. Ween, 822 N.Y.S.2d at 260. [9]

Having made such factual findings, the Ween court gave no
indication that it was overruling established contract law. To
the contrary, it properly limited its ruling to the facts of the
case before it:

> in this matter … the provision, which
> permits the recovery of attorneys' fees
> by the attorney should he prevail, [is]

---

[9]    In Ween, the Appellate Division also found that:
       1. Attorney failed to deny Client's assertion
       that she appeared in his office, accompanied by
       friends, on more than one occasion, to register
       her objections.

       2. Attorney's invoices submitted in support of
       the motion did not set forth his hourly rate,
       the billable hours expended, or the particular
       services rendered.

    Client had alleged that she wrote Attorney stating: "I feel your bills
are not at all honest…[,]" but kept making partial payments because Attorney
allegedly convinced her that she could not retain another attorney until
Attorney's entire fee had been paid. Client also alleged that Attorney
intimidated her when she tried to dispute Attorney's bills. Client alleged
that when she did so, attorney was "…verbally abusive, cursing, throwing wild
temper tantrums and turning purple with rage…". Ween, 822 N.Y.S.2d at 260.
    Client also claimed that she eventually discovered that Attorney
charged her "…for shoddy work and mistakes, including, but not limited to:
two Housing Court proceedings which were dismissed, one that was withdrawn
due to improper service, and the other in which the court declined to sign
the order to show cause initiating the proceeding; three unsuccessful, and
duplicative, contempt motions made in one Housing Court proceeding, all of
which were denied for the same reasons; and the filing of a motion for
consolidation, which was denied, after [the] Civil Court had previously
refused to sign an order to show cause for the exact same relief." Ween, 822
N.Y.S.2d at 260.
    Dr. Ernst alleged in Supreme Court that Carey made six unsuccessful
bail applications during the extradition proceeding in District Court. The
Supreme Court found that and other allegations of breach of fiduciary duty
and malpractice to have no merit, dismissed debtors' affirmative defenses and
counterclaims and denied debtors' motion for summary judgment. (Appx Ex 2:
Sup Ct Order p 2-3).

fundamentally unfair and unreasonable."
<u>Ween</u>, 822 N.Y.S.2d at 260 (emphasis
added).

"'When an opinion issues for the Court, it is not only the
result but also those portions of the opinion necessary to that
result by which we are bound.'" <u>Horne v. Coughlin</u>, 191 F.3d 244,
247 (2d Cir. 1999) <u>citing</u> <u>Seminole Tribe v. Florida</u>, 517 U.S.
44, 67, 116 S. Ct. 1114 (1996); <u>see</u> <u>Hormel Foods Corp. v. Jim</u>
<u>Henson Productions, Inc.</u>, 73 F.3d 497, 508 (2d Cir. 1996). To
the extent <u>Ween</u> is binding with regard to a non-reciprocal
Collection Fee clause, it is binding only where an attorney has
interfered with the client's right to walk away from the
attorney. <u>Cf</u>. <u>Cooperman</u>, 83 N.Y.2d at 472, 611 N.Y.S.2d at 468.
Neither the Supreme Court nor the Bankruptcy Court found any
such fact in this case.

With respect to other cases, the Appellate Division merely
speculated:

> the clause, even if not so designed,
> has the distinct <u>potential for</u>
> <u>silencing a client's complaint</u> about
> fees for fear of retaliation for the
> nonpayment of even unreasonable fees.
> (<u>Ween</u>, 822 N.Y.S.2d at 261-62)(emphasis
> added).

The Appellate Division provided no basis to support the
conclusion, drawn by the Bankruptcy Court, that it held every
non-reciprocal Collection Fees clause "fundamentally unfair and
unreasonable." The Appellate Division did not find that the

-17-

clause was designed to silence a client. The Appellate Division would have no reason to speculate about potential harm from such a clause if it ruled it was *per se* unenforceable. The comment concerning potential harm from the clause was meant to convey that an analysis of its enforceability had to be made in the context of other actions taken by the attorney in question towards his client. The Bankruptcy Court made no such analysis.

The fear that a non-reciprocal Collection Fee clause alone might deter or chill a client from challenging an unreasonable bill is unfounded since a court must, despite the terms of the clause, determine the reasonableness of the fees sought. Federal Deposit Insurance Corporation v. Kassel, 72 A.D.2d 787, 788, 421 N.Y.S.2d 609, 611 (App. Div. 2d Dep't 1979); Cutner, 1998 WL 104612 at *4. It is undisputed that the court could decide not to award attorneys' fees if the client's claim or defense was established. Cutner, 1998 WL 104612 at *4.

To the extent that the Appellate Division considered the potential for harm, it was speculative, merely an advisory opinion. Havell v. Islam, 301 A.D.2d 339, 348, 751 N.Y.S.2d 449, 455 (App.Div. 1st Dept. 2002); Olin Corporation v. Consolidated Aluminum Corporation, 5 F.3d 10, 17 (2d Cir. 1993). It was not the controlling precedent the Bankruptcy Court found it to be.

Whether or not there is a controversy in this case that parallels Ween "is a matter of degree and must be determined on

a case-by-case basis." Olin, 5 F.3d at 17 (citation omitted).
However, the Bankruptcy Court ignored the fact-finding dimension
employed by the Ween court and the courts Ween relied upon. The
Bankruptcy Court did not find that Carey did anything that
chilled "the client's unbridled prerogative to walk away from
the lawyer." Indeed, it made no negative findings about Carey's
conduct.

### 3.   **Lustig v. Horn** and **Gruber v. Erikson**

The Appellate Division relied on Lustig v. Horn, 315
Ill.App.3d 319, 732 N.E.2d 613 (Ill. App. Ct. 1st Dist. 2000) and
Gruber & Colabella, P.A. v. Erikson, 345 N.J.Super 248, 784 A.2d
758 (N.J. Super. Ct. Law Div. 2001). Each is consistent with the
general principles in Cooperman and neither case supports the
result reached in this case. However, there is nothing in the
Bankruptcy Court's decision to indicate that the court
considered either case. The error in its interpretation of Ween
might have been averted had it done so. The Bankruptcy Court
would have seen that none of those cases held a non-reciprocal
attorneys' fee clause unenforceable *per se*.

The Lustig court found the following facts:

1.   The attorney began his representation of client on
     January 14, 1996 and signed a retainer agreement on
     January 19, 1996.

2.   The attorney knew client was unable to pay for the
     attorneys' services. Client had been out of work since
     1993 because of injuries in an automobile accident.
     One year after the accident, client sold his residence

to a friend because he was unable to make the mortgage payments. Client arranged to rent the home he sold but by July 1995, he was unable to make rent payments.

3.    At one of his first meetings with Lustig, Client's brother-in law promised to pay Lustig because client had little money.

4.    When the in-law backed away from his promise, Lustig required client to sign the retainer agreement. The agreement contained a Collection Fees clause.

5.    Lustig represented client in 4 separate matters, only one of which was covered by the retainer agreement. For approximately three years, until November 1998, Lustig continued to provide services and to bill client. Apart from one payment of $18,000, client did not pay Lustig's bills. One of the last bills for services reflected that client owed Lustig over $30,000. Lustig, 315 Ill.App.3d at 321-26, 732 N.E.2d at 615-619.

The court found that client remained in impoverished circumstances during the representation. Lustig, 315 Ill.App.3d at 322-323, 732 N.E.2d at 616-617.  The court also found that client had made repeated protestations concerning the unfairness of the retainer agreement and found Lustig's conduct toward the client "oppressive." The court found that these matters raised a presumption of undue influence in the case that Lustig met with scant evidence. Lustig, 315 Ill.App.3d at 326-27, 732 N.E.2d at 619-20.

Based on Lustig's own testimony, after he learned that the in-law would not pay his bills, the court found:

'[a]t some point after we had commenced representation … I confronted Mr. Horn, told him that without a personal guaranty [from the in-law] that I would require him to sign a retainer agreement and to pay the fees as they

-20-

came due. He ultimately agreed to that.
…' <u>Lustig</u>, 315 Ill.App.3d at 326, 732
N.E.2d at 619.

Lustig can be explained by the same analysis used in
<u>Cooperman</u> and <u>Ween</u>. In each case, the attorney led the client to
believe he had to pay the attorney a penalty for the freedom to
choose other counsel. Since Lustig's client was impoverished and
could not pay the attorney's bills, he was hostage to an
obligation to pay Lustig for services rendered before Lustig
demanded a retainer agreement, and he signed it apparently
unaware of his right to terminate his relationship with Lustig
at any time for no reason. <u>Cf.</u> <u>Cooperman</u>, 83 N.Y.2d at 472, 611
N.Y.S.2d at 468.

The Illinois court stressed the presumption of undue
influence where an "attorney enters into a transaction with his
client during the existence of the fiduciary relationship."
<u>Lustig</u>, 315 Ill.App.3d at 326, 732 N.E.2d at 619. The Lustig
court concluded that Lustig continued the relationship knowing
of his client's impoverishment intending by his agreement to
hold him hostage as a client. In <u>Cooperman</u>, the attorney used
his non-refundable retainer as a penalty to prevent the client
from discharging him. <u>Cooperman</u>, 83 N.Y.2d at 474, 611 N.Y.S.2d
at 469. In <u>Ween</u>, <u>Lustig</u> and <u>Cooperman</u>, each court addressed the
attorney's relationship with his client at a time when the
attorney was still providing services to the client. In each

case the attorney maneuvered to keep the client. In doing so, the attorney violated his duty not to place his own interests over those of his client. Cf. Cooperman, 83 N.Y.2d at 472, 611 N.Y.S.2d at 467. In each case the attorney compromised "the [client's] right to sever the fiduciary services relationship with the lawyer." Cooperman 83 N.Y.2d at 474, 611 N.Y.S.2d 468-469. The Bankruptcy Court found no such facts in this case.[10]

In Gruber, after the requisite notice, attorneys sued their client for unpaid fees and Collection Fees. Client defaulted and did not oppose attorney's application for judgment. The Superior Court conceded that a non-reciprocal Collection Fees clause was enforceable under New Jersey law but stated that an attorney never has the right to charge more than a fair and reasonable fee. Gruber, 784 A.2d at 759-60.

The Collection Fees portion of the retainer called for the client to pay as Collection Fees one third of the balance due,

---

[10]    Indeed, the Bankruptcy Court could not find such facts. As noted, Carey was granted leave, after the conclusion of the extradition proceeding, by Magistrate Judge Henry Pitman to withdraw as counsel for Dr. Ernst for non-payment of his bills. Before the final order was signed, Dr. Ernst had retained Attorney #1 to represent him in filing a *habeus corpus* petition. When Carey sued Dr. and Mrs. Ernst for breach of the written retainer agreement, Attorney #1 initially represented them. Later, Dr. and Mrs. Ernst retained Attorney #2 as their attorney to represent them in the Supreme Court. Neither of those attorneys nor counsel in this proceeding ever alleged that Carey exercised undue influence over debtors or restricted their right to seek other counsel.
    During the extradition proceeding, the costs rose in large measure because debtors required Carey to keep two outside attorneys advised of the matter, one an attorney at a major Washington D.C law firm and the other an attorney who was a former U.S. congressman. Carey advised them on each significant step he took in representing Dr. Ernst, to include providing a copy of each paper filed with the court. (R-4 Ex J).

-22-

regardless of the actual collection costs incurred by the
attorney. The court found this provision to be particularly
unfair to the client, because:

  a)    it required client to pay a fixed percentage of the
        balance due regardless of the actual collection costs
        incurred by the attorney; and

                        ***

  b)    as attorney *pro se*, because client defaulted and did
        not oppose the application for judgment, attorney had
        not incurred any financial obligation to pay for legal
        representation. Gruber, 784 A.2d at 760.[11]

The Superior Court concluded that allowing judgment for

Collection Fees as a percentage of the amount owed would amount

to an unfair penalty to the client and an unearned and

unreasonable windfall to the attorney. Gruber, 784 A.2d at 760.

In Gruber, the penalty was the distinguishing factor that

brought it within the scope of the principles discussed in

Cooperman. The requirement to pay a fixed percentage of the

unpaid bills was a penalty on the client when there was no

evidence that such a fee could ever be considered reasonable.

    The Appellate Division of the Superior Court of New Jersey

has since distinguished Gruber, an opinion of a lower court. In

Hrycak v. Kiernan, 367 N.J. Super. 237, 842 A.2d 313 (N.J.

Super. A.D. 2004), the court made it clear that non-reciprocal

Collection Fees clauses are enforceable and that Gruber is *sui*

---

[11]    The clause in Carey's retainer agreement sought to collect only for the
actual time devoted to the collection effort. Contrary to Gruber, debtors
aggressively pursued baseless allegations of misconduct against Carey,
forcing him to devote enormous resources to defeat their claims.

*generis*, not a blanket prohibition against non-reciprocal

Collection Fees clauses.

In <u>Hrycak</u>, attorney's retainer agreement contained a non-

reciprocal Collection Fees clause:

> Should attorney bring suit against
> client for fees due under this
> agreement, and after the requisite pre-
> action notice required by Rules
> Governing the Courts of New Jersey,
> client shall be responsible for all
> fees and attorney['s] fees with a
> minimum of $450.00 attorney's fees for
> the filing of same. <u>Hrycak</u>, 367 842
> A.2d at 313.

Attorney sought from client outstanding legal fees,

including the $450 minimum for collection fees. In a fee

arbitration proceeding, attorney was awarded over $7,200, of

which approximately $2,200 was still owed by client. After

client failed to pay the $2,200 pursuant to the arbitration

award, attorney sued client for approximately $2,700, adding the

$450 minimum in collection fees. <u>Hrycak</u>, 367 842 A.2d at 314.

The New Jersey Appellate Division found that that in

support of the application for his minimum collection fee of

$450, attorney detailed the work performed in filing suit.

<u>Hrycak</u>, 367 842 A.2d at 314. The New Jersey Appellate Division

distinguished <u>Gruber</u>, and upheld the $450 in collection fees,

stating that:

> Subject to review of reasonableness by
> the court, the collection fee with a

> minimum of $450 was based upon the
> express terms of the retainer
> agreement. This is not a case [like
> Gruber] where the retainer penalizes
> the client for a fixed percentage of
> the fees owed if the attorney is forced
> to file suit to collect. Hrycak, 367
> 842 A.2d at 314.

There is no prohibition in the rules of the State of New York against Collection Fees where it is provided for in the parties' retainer agreement. Compare Hrycak, 367 842 A.2d at 314. The focus in all the cases is not on the existence of a negotiated Collection Fees clause but upon the reasonableness of the fees sought pursuant to such clause.

In the absence of any fact finding that Carey acted unreasonably, the Bankruptcy Court erred in abrogating Carey's right to contract with debtors to pay his Collection Fees.

### 4.    The Bankruptcy Court Erred In Failing To Address Carey's Claim As *Sui Generis*

In this case, the Bankruptcy Court erred in failing to hold a hearing to determine the existence of any facts by which to weigh whether or not to enforce the questioned terms of Carey's retainer agreement with debtors.

Cooperman was expressly limited in its holding to declaring non-refundable attorney fee agreements unenforceable. Cooperman, 83 N.Y.2d at 475, 611 N.Y.S.2d at 469. ("[W]e imply no views with respect to the wider array of factors by which attorneys and clients may have fee dispute controversies resolved.").

"[W]e intend no effect or disturbance with respect to other types of appropriate and ethical fee agreements. Cooperman, 83 N.Y.2d at 476, 611 N.Y.S.2d at 470. (citation omitted).

The Court of Appeals emphasized the need to view each attorney fee arrangement individually:

> We are confident that the Appellate Divisions, in the highest traditions of their regulatory and adjudicatory roles, will exercise their unique disciplinary responsibility with prudence, so as not to overly brand past individualized attorney fee arrangements as unethical, and will, instead, fairly assess the varieties of these practices, if presented, on an individualized basis. Cooperman, 83 N.Y.2d at 476, 611 N.Y.S.2d at 470.

Consistent with the protective layer of court supervision that scrutinizes each attorney retainer agreement before it to determine if it might unreasonably take advantage of a client, citing Cooperman, 83 N.Y.2d at 471-472, 611 N.Y.S.2d at 467, the Ween court recognized:

> …with regard to attorney fee arrangements, the courts, as a matter of public policy, give particular scrutiny to the reasonableness of the fee arrangements between attorneys and clients pursuant to their interest in, and statutory power, to regulate the practice of law. (citations omitted) (Ween, 822 N.Y.S.2d at 261).

The Appellate Division relied on Cooperman, 83 N.Y.2d at 471-472, 611 N.Y.S.2d at 467 in reaching its conclusion that:

> <u>In this matter</u> [the provision is]
> fundamentally unfair and unreasonable.
> (<u>Ween</u>, 822 N.Y.S.2d at 261 (Citations
> omitted)(emphasis added).

The Appellate Division limited its decision in <u>Ween</u> consistent with the cautions described in <u>Cooperman</u>. <u>Cooperman</u>, <u>Ween</u>, and the cases the Appellate Division relied on are to be considered *sui generis* since the holding in each depends on the specific facts of the individual case. <u>See</u>, <u>e.g.</u>, <u>United States v. Nusraty</u>, 867 F.2d 759, 767 (2d Cir. 1989). In each case, the court relied on facts it or another court determined were material to the analysis in addition to the terms of the Collection Fees clause. Since the facts in <u>Ween</u> do not parallel those in this case, it was error for the Bankruptcy Court to apply <u>Ween</u> as it did.

Finally, the Bankruptcy Court held that <u>Ween</u> is the applicable law in the Appellate Division, First Department because it is a final decision that may not be appealed to the New York State Court of Appeals. (Appx Ex 8: MSJ Order p 11-12).[12] The Bankruptcy Court stated, even if <u>Ween</u> were pending on appeal before the New York State Court of Appeals (despite the absence of citation to any New York State cases as precedent for the broad reading on enforceability attributed to the Appellate

---

[12]    Carey does not dispute that <u>Ween</u> became a final decision after he submitted his memorandum in opposition to debtors' motion for summary judgment.

Division by the Bankruptcy Court), it:

> …still could look to the *Ween* case as a cogent and well considered opinion by an intermediate state court as to the enforceability of the very same retainer agreement that is at issue in this case… [because Ween] has provided a strong indication of how New York's highest court would decide the same issue. (Appx Ex 8: MSJ Order p 12).

For the reasons stated above, the Bankruptcy Court erred in stating that Ween is a clear indication that the New York Court of Appeals would declare every non-reciprocal Collection Fees clause unenforceable *per se*.

### POINT II

### THE BANKRUPTCY COURT ERRED IN FINDING THAT *RES JUDICATA* DID NOT BAR DEBTORS' MOTION FOR SUMMARY JUDGMENT

Even if the Bankruptcy Court properly read the ruling in Ween, it erred in holding that *res judicata* did nor bar debtors from relitigating their liability for Collection Fees on the basis of the later Ween decision. (Appx Ex 8: MSJ Order p 19-20).

Since the Supreme Court's 2004 decision was final regarding debtors' liability for Collection Fees, *res judicata* barred debtors from re-litigating that issue. Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 284 (2d Cir. 2000).

### A. *RES JUDICATA* BARS DEBTORS FROM RELITIGATING THE FINAL SUPREME COURT DECISION

There are four reasons why the Court must conclude that the Supreme Court decision was final.

First, the Carey Judgment was decided on all issues of liability in the Supreme Court before this matter was commenced and was a final decision. Hennessy v. Cement and Concrete Worker's Union Local 18A, of the Laborer's Int'l Union of North America, Afl-CIO, 963 F.Supp. 334, 338 (S.D.N.Y. 1997) (the requirement of finality for purposes of res judicata does not necessarily mean a final judgment in an action). Accord In re Halperin, 215 B.R. 321, 335 (Bankr. E.D.N.Y. 1997). Debtors filed their Petition without seeking review by a New York court. They also failed to move the bankruptcy court to stay its proceedings to permit such a review. Cf. Kelleran v. Andrijevic, 825 F.2d 692, 696 n. 2 (2d Cir. 1987).

Second, for purposes of the decision on debtors' motion for summary judgment, the Bankruptcy Court conceded the finality of the Supreme Court determination on liability.[13]

Third, in state court, in their answer, in their opposition to Carey's motion for summary judgment, and in their cross-

---

[13]    Carey did not argue that the Supreme Court made a final determination on the issue of Collection Fees damages, only on liability for Collection Fees.(Appx Ex 6: MSJ Opp p 9). The Bankruptcy Court noted that the language Carey relied upon, to show the Supreme Court decision was final on the question of liability for Collection Fees, was "…ambiguous and does not explicitly find liability or enter judgment against [debtors] for collection fees." (Appx Ex 8: MSJ Order p 19). However, the Bankruptcy Court gave Carey the benefit of his interpretation of the Supreme Court decision and, for the purposes of its decision, assumed that the Supreme Court had found debtors liable for collection fees. (Appx Ex 8: MSJ Order p 19-20).

motion for summary judgment, debtors never challenged the enforceability of the Collection Fees clause in Carey's retainer agreement. Because they never raised the issue in the Supreme Court, even if they were now to appeal the Supreme Court decision to the Appellate Division, they could not challenge the clause for the first time on such appeal. See Pozdniakov v. Immigration and Naturalization Service, 354 F.3d 176, 177-178 (2d Cir. 2003); In re Blackwood Associates, L.P., 153 F.3d 61, 67 (2d cir. 1998).

Fourth, when Carey appealed to the District Court the denial in its entirety of his claim for Collection Fees, and the court remanded the matter for a hearing to determine the amount of the fees, it implicitly confirmed the finality of the Supreme Court decision that found debtors liable under contract for Carey's Collection Fees. If the issue was before the District Court, debtors could have appealed that decision. If it was not before the District Court, debtors could have raised it as an issue. Either way, since debtors failed to raise the issue, they could not do so in their motion for summary judgment. Id.

The Bankruptcy Court erroneously disallowed Carey's claim for collection fees in its entirety, holding that:

> …no doctrine of issue preclusion
> relating to a state court judgment,
> particularly one that at most only
> determined liability, can properly
> constrain the discretion of the Court

       to allow or disallow claims against the
       Debtors. (Appx Ex 8: MSJ Order p
       21)(emphasis added).

In reliance upon <u>In re United States Lines</u>, 199 B.R. 476, 482 (Bankr. S.D.N.Y. 1996), the Bankruptcy Court argued that the question of whether a claim should be allowed or disallowed is purely a creature of bankruptcy law, and therefore is not an issue capable of being raised in state courts or to which *res judicata* applies. (Appx Ex 8: MSJ Order p 20). With respect to the liability issue, however, its reliance on <u>United States Lines</u> was misplaced. [14]

<u>United States Lines</u> was limited to a determination of the "amount" of damages, and did not address the finality of an earlier state court decision, or the impact on it of a post-petition legal decision. <u>United States Lines</u>, 199 B.R. at 480.

The Bankruptcy Court was bound to the liability determination of the Supreme Court unless an exception was found to prevent operation of the judgment's preclusive effect. <u>Kelleran v. Andrijevic</u>, 825 F.2d 692, 694 (2d Cir. 1987). Neither Debtors nor the Bankruptcy Court argued any such exception.

---

[14]    Carey does not dispute that the Bankruptcy Court is required to determine the reasonable amount of his collection fees. However, the Bankruptcy Court's discretion to disallow Carey's fee application must be exercised within the limits stated in 11 U.S.C. § 502(b). <u>See</u> <u>Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.</u>, 127 S. Ct. 1199, 1204 (2007). <u>Accord</u> <u>In re Shaffner</u>, 320 B.R. 870 (Bankr.W.D.Mich. 2005); <u>In re Cluff</u>, 313 B.R. 323 (Bankr.D.Utah 2004); <u>In re Taylor</u>, 289 B.R. 379 (N.D.Ind. 2003).

Under New York law, application of the principle of *res judicata* bars re-litigation of a claim actually raised as well as a claim that might have been raised in a prior proceeding. Monahan, 214 F.3d at 284.

Debtors decision not to raise the issue waived that argument and debtors cannot re-litigate the issue before the bankruptcy court by making a motion for summary judgment. Kelleran, 825 F.2d at 695 (defendant should have attacked claims in state court; bankruptcy proceedings may not be used to re-litigate issues already resolved by a court of competent jurisdiction). Accord In re Mathiason, 16 F.3d 234, 238 (8th Cir. 1994). See also Thompson & Co., LLP v. Lucille Murray Child Development Center, Inc., 13 A.D.3d 120, 785 N.Y.S.2d 690 (App. Div. 1st Dep't 2004); see Manhattan Telecommunications Corp. v. Best Payphones, Inc., 299 A.D.2d 178, 178, 749 N.Y.S.2d 246, 247 (App. Div. 1st Dep't 2002).

Under the Full Faith and Credit Clause of the Constitution, the Bankruptcy Court was required to give the same preclusive effect to the Carey Judgment as would be given under the law of New York. 28 U.S.C. § 1738; see Migra v. Warren City School Dist., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996); Kelleran, 825 F.2d at 694.

**B.    THE BANKRUPTCY COURT ERRED IN APPLYING 11 U.S.C. § 502(b) TO DEFEAT CAREY'S *RES JUDICATA* ARGUMENT**

The Bankruptcy Court, *sua sponte*, addressed Carey's *res judicata* argument as "…essentially a timing argument" governed by 11 U.S.C. § 502(b)(1), and held once an objection has been made to allowance, it is for the Bankruptcy Court to determine the "amount" of such claim as of the petition date. (Appx Ex 8: MSJ Order p 12).

The Bankruptcy Court also saw its duty to determine the "amount" of Carey's claim as one that gave it leave to ignore the final judgment of the Supreme Court that found debtors liable to Carey. The Bankruptcy Court reasoned that subsection (1) of 11 U.S.C. § 502(b) "…provides no 'point in time' reference … with respect to disallowing a claim and offers no guidance as to what constitutes 'applicable law' or when the bankruptcy court should deem such law to be applicable for the purposes of disallowing a claim." (Appx Ex 8: MSJ Order p 13). As a result, the Bankruptcy Court mistakenly found that without such guidance it could apply the Ween case to disallow Carey's Collection Fees claim. (Appx Ex 8: MSJ Order p 12-19).

To reach the above result, the Bankruptcy Court noted that other sub-sections of § 502 did provide a restrictive 'point in time' reference:

> …the more restrictive language of [11 U.S.C.] §§ 502(e),(f),(g),(h), and (i) … prescribe language calling for

certain kinds of claims to be allowed
or *disallowed* as if such claims had
arisen <u>before the date of filing of the
petition</u>. The language used
demonstrates that Congress knew how to
be specific in providing an effective
date for disallowing claims in a
variety of other subsections of [11
U.S.C.] § 502 … but has not included
any such effective date within
§502(b)(1). (Appx Ex 8: MSJ Order p 15)
(italics emphasis in original;
underscore emphasis added).

The Bankruptcy Court simply misread 11 U.S.C. § 502(b).
Section 502(e)(2) provides that any of certain claims for
reimbursement or contribution that becomes "fixed after the
commencement of the case [shall be allowed or disallowed] as if
such claim had become fixed <u>before the date of the filing of the
petition</u>."

11 U.S.C. § 502(f),(g),(h) and (i) refer respectively to
(f) a claim arising in the ordinary course of debtor's business
after the commencement of the case; (g) a claim arising from the
rejection of a plan; (h) a claim arising from the recovery of
property; and (i) a claim that does not arise until after the
commencement of the case for a certain tax. Each of the
foregoing sections relates to post-petition proceedings and
provides that the claims shall be determined and shall be
allowed or disallowed "as if such claim had arisen <u>before the
date of the filing of the petition</u>".

Section 502 deals with claims being allowed unless an

objection is made to a claim. § 502(b) states that if such an objection is made, after notice and a hearing, the court:

> shall determine the amount of such claim … <u>as of the date of the filing of the petition</u> … .

There is no meaningful distinction for bankruptcy purposes between the phrases "before the date of the filing of the petition" and "as of the date of the filing of the petition" and the Bankruptcy Court drew no such distinction. Sections 502(e) through (i) refer to matters that are determined after the date of the filing of the petition nevertheless being determined as though they had "arisen before the date of the filing of the petition."  The legislature could have said in such clauses with no material difference that such claims should be treated "as if such claim had arisen as of the date of the filing of the petition."

The Bankruptcy Court's argument that § 502(b) fails to provide for restrictive point in time references simply ignores the rule that "…courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." <u>Arciniaga v. General Motors Corp.</u>, 460 F.3d 231, 236 (2d Cir. 2006).

It is clear from the plain language of the statute that Congress meant each subsection of 502(b) to be operative as of

the date the petition was filed. Accord In re Parker, 308 B.R. 129, 132 (Bankr. Conn. 2004); Kohn v. Leavitt-Berner Tanning Corp., 157 B.R. 523 (N.D.N.Y. 1993).

The Bankruptcy Court disregarded Parker, 308 B.R. 129, the only case it found addressing the issue of timing as it construed it in this case.

Parker holds that "applicable law" in the bankruptcy context means the law that existed on the petition date. Parker, 308 B.R. at 132. The Bankruptcy Court rejected the case as unpersuasive because there appeared to be no support within the actual text of § 502(b)(1) for limiting the term "applicable law" to mean only relevant law in effect on the petition date. (Appx Ex 8: MSJ Order p 14).

Contrary to the plain language of the case, the Bankruptcy Court argued that Parker actually supported its view that events arising after the petition date, such as post-petition confirmation, could lead to disallowance of a claim. (Appx Ex 8: MSJ Order p 14). The Bankruptcy Court misconstrued Parker. Parker rendered a claim unenforceable by operation of law even though the claim had been enforceable on the petition date. However, the claim became unenforceable pursuant to bankruptcy law that was in force and applicable as of the date of the petition, not new law that came into effect after the petition date. Parker, 308 B.R. at 132.

**C.   JUDGE BLACKSHEAR'S DENIAL OF THE CLAIM FOR COLLECTION FEES IS NOT THE LAW-OF-THE-CASE**

In support of its rejection of Carey's *res judicata* argument, the Bankruptcy Court claimed, mistakenly, that Judge Blackshear's ruling was the law-of-the-case since it allegedly rejected Carey's *res judicata* argument regarding debtors' liability for the Collection Fees claim. (Appx Ex 8: MSJ Order p 20). Judge Blackshear never decided that issue against Carey.

Judge Blackshear's Opinion of February 2005 supports Carey's position that the <u>validity of the retainer agreement</u> and <u>debtors' liability</u>, as determined by a final decision of the Supreme Court, were not before the Bankruptcy Court:

> The purpose of the bankruptcy court's review is to determine '<u>to what extent the judgment is enforceable</u> against the Debtor's estates pursuant to the Bankruptcy Code, ***not to decide the validity of the state court judgment.***'
> (Appx Ex 3: Blackshear Opinion p 6-7) (internal citations omitted) (emphasis added).

Judge Blackshear rejected Carey's Collection Fees claim in its entirety, without a hearing, on the basis that the amount of Carey's charges were unreasonable for each and every tenth of an hour he charged.[15] (Appx Ex 3: Blackshear Opinion p 9-10).

---

[15]    The Bankruptcy Court abused its discretion when it made negative observations regarding Carey's Collection Fees (Appx Ex 8: MSJ Order p 6n9), without having held a hearing to determine the facts of the case, and despite the District Court having reversed Judge Blackshear on the same basis. (continued)

Judge Blackshear did not rule that he was free to disregard the preclusive effect of the Supreme Court decision. If Judge Blackshear had rejected the Carey claim, made over a year before the Ween decision was rendered, on legal grounds, and the Patterson Decision had affirmed that determination, the District Court would have had no reason to remand the matter to the Bankruptcy Court for a hearing to determine the reasonable amount of Carey's claim for Collection Fees. [16]

However, under the law-of-the-case doctrine, since the case was decided by an appellate court and remanded for a hearing, the Bankruptcy Court was bound to proceed in accordance with the

---

The Bankruptcy Court had previously made, during oral argument on the motion for summary judgment in March 2007, similar speculative but negative comments about Carey's Collection Fees. Combined, those comments strongly suggest that the Bankruptcy Court has prejudged the case.

To address such concerns, following oral argument, on March 30, 2007, Carey wrote to the Bankruptcy Court and requested a pre-motion conference to discuss, among other proposed motions, a motion to strike the prejudicial comments made by the Bankruptcy Court. The Bankruptcy Court denied the request. Contrary to the Bankruptcy Court's seemingly biased admonition in the MSJ Order that Carey improperly communicated with the Court, Carey's letter was countenanced by Rule 9076-1 of the Local Bankruptcy Rules for the Southern District of New York which permits any party to request a conference at any time, for any reason.

Finally, Carey included a history of his settlement negotiations with debtors in the March 30 letter to the Bankruptcy Court in response to the Court's negative comments about the nature of his collection efforts, and the Court's desire to see the parties settle the amount of the claim. It became apparent that the Court, without any factual basis, assumed that Carey was the obstacle to settlement. To correct that impression, Carey informed the Court of his efforts to settle with debtors' attorneys.

[16] Carey argued to Judge Blackshear that the Supreme Court decision barred debtors from re-litigating debtors' liability, including the rate of interest in the Supreme Court's order.

In reducing the rate of interest on the Extradition Judgment portion of the Carey Judgment from 12% to the statutory rate of 9% per annum, Judge Blackshear reasoned that he had the authority to review the allowed amount of interest awarded by the Supreme Court because "…the claims allowance process is within the exclusive jurisdiction of the bankruptcy court, [and as such,] the issue could not have been raised in state court." (Appx Ex 3: Blackshear Opinion p 7).

mandate and such law-of-the-case as was established in the

Patterson Decision. <u>Kerman v. City of New York</u>, 374 F.3d 93,

109-110 (2d Cir. 2004). It failed to do so.

The Patterson Decision reversed Judge Blackshear and

remanded the matter for a hearing "…for a determination of what

fees and disbursements if any should be allowed, as contemplated

by 11 U.S.C. § 502(b)." (Appx Ex 4: Patterson Decision p 9). <u>See</u>

<u>also</u> <u>Kohn</u>, 157 B.R. at 527; <u>Kelleran</u>, 825 F.2d at 695-696.

## CONCLUSION

The Court should reverse the decision of the Bankruptcy

Court and remand the case for proceedings consistent with the

Patterson Decision.

Dated:  New York, New York
        July 9, 2007

                              Respectfully,

                              CAREY & ASSOCIATES LLC


                              By: <u>/s/ MICHAEL Q. CAREY</u>
                                  Michael Q. Carey (MC 1802)
                              Attorneys for Appellant
                              521 Fifth Avenue, Suite 3300
                              New York, NY 10175-3399
                              Tel: 212-758-0076
                              Fax: 212-758-0069
Of Counsel:
        Natasha P. Concepcion