Exhibit 3

NOT FOR PUBLICATION

```
------------------------------------------------------x
                                            :
In re:                                      :
                                            :
RUDOLF J.O. ERNST and                       :     Chapter 13
ANGELIKA L. ERNST,                          :     Case No. 04-12291 (CB)
                                            :
              Debtors.                      :
------------------------------------------------------x
```

APPEARANCES:

KOERNER, SILBERBERG & WEINER
Attorneys for Rudolf Ernst and Angelika Ernst
112 Madison Avenue, 3rd Floor
New York, New York 10016

By:   Joseph L. Fox, Esq.

CAREY & ASSOCIATES, LLC
Attorneys for Michael Q. Carey and
Carey & Associates
521 Fifth Avenue, Suite 3300
New York, New York 10175-3399

By:   Michael Q. Carey, Esq.


BEFORE:

THE HONORABLE CORNELIUS BLACKSHEAR
UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

<u>OPINION ON THE FEE APPLICATION OF MICHAEL Q. CAREY AND CAREY & ASSOCIATES AND THE RELATED DEBTORS' OBJECTION TO CLAIM NO. 9 FILED BY MICHAEL Q. CAREY AND CAREY & ASSOCIATES</u>

**Matter Before the Court**

Before the Court is the fee application of Michael Q. Carey, Esq. ("Carey") and Carey & Associates, LLC (the "Carey firm") requesting attorneys' fees for the period beginning August 1998 through March 31, 2004 in the amount of $189,978.50, plus costs and disbursements in the amount of $15,729.28, for a total of $205,707.78. In addition, this Court will consider the related objection to claims filed pursuant to 11 U.S.C. § 502(b) and Rule 3007 of the Federal Rules of Bankruptcy Procedure by Rudolf J. O. Ernst and Angelika L. Ernst (the "Debtors" or the "Ernsts") on September 27, 2004, referencing Claim No. 9 of Michael Q. Carey, Esq. and the Carey firm. On October 28, 2004, Carey filed a response to the Debtors' objection to claims. The matter was heard on November 18, 2004. Subsequently, this Court scheduled an evidentiary hearing on February 22, 2004, to determine whether the fees and expenses documented on the fee application of Carey and the Carey firm were allowable under the Bankruptcy Code. The following is the decision of this Court.

**Facts and Procedural History**

The relationship between Carey and the Ernsts dates back to January 1998, when Carey was formally retained to represent Rudolf Ernst in an extradition proceeding commenced in the District Court of the Southern District of New York. *Debtors' Objection to Claims ¶ 9 at 2; Retainer Agreement dated January 5, 1998, Ex. "B" of the Debtor's Objection to Claims.* Pursuant to the

2

retainer agreement (the "Agreement"), the Ernsts paid a $50,000 retainer fee to Carey at signing. Id. The payment and default provisions of the Agreement specifically indicated that bills for fees and disbursements were to be paid within twenty (20) days of receipt and failure to pay within thirty (30) days of the billing date would trigger the following: (1) Carey would be authorized to draw a check from the retainer funds to cover the debt, and the Ernsts would have to provide immediate funds to Carey in order to restore the account to its original balance; (2) the Ernsts would be charged 12% interest per year, (or 1% per month compounded monthly) accruing on the unpaid amounts until the deficit was paid in full; and (3) Carey retained the right to withdraw from representation and "pursue payment" of the unpaid amounts. *Retainer Agreement at 4-5.* The Agreement contemplated that the Ernsts would pay for any collection efforts at the rates set forth in the Agreement. *Retainer Agreement at 5.*

On July 28, 1998, Carey filed an Affidavit in the District Court for the Southern District of New York to withdraw as counsel to Rudolf Ernst citing the failure of Ernst to pay legal fees and disbursements billed for the period May 1, 1998 through June 20, 1998. *Debtor's Objection, Ex. "C" Affidavit ¶ 2 at 1.* Carey indicated that "continuing representation of Ernst would constitute an unreasonable hardship."*Debtor's Objection, Ex. "C" Affidavit ¶ 4 at 1.* In addition, Carey admits that he refused an offer in the summer of 1998, (made by Ernst while still incarcerated), to settle the balance of fee and disbursement arrears with a $50,000.00 payment, spread over a two year period and secured by a mortgage on the Ernsts' apartment. *Debtor's Objection, Ex. "C" Affidavit ¶ 2 at 2.* On August 13, 1998, the Carey firm filed a summons and complaint in the Supreme Court of New York, County of New York, (as a *pro se* litigant) against Rudolf, Angelika and Rudi Ernst, Jr. *Carey*

3

*Complaint, Evidentiary Hearing Ex. "10".* During the 7 ½ month term that Ernst retained Carey as counsel in the extradition proceeding, the Carey firm submitted bills in the aggregate amount of $227,039.78 of which $154,765.64 was paid on or before July 31, 1998. *Carey Complaint, Evidentiary Hearing Ex. "10".* On November 10, 2003, the New York Supreme Court heard arguments on Carey's motion for summary judgment. On March 26, 2004, the New York Supreme Court rendered a decision in favor of Carey awarding $72,274.14 plus interest from July 31, 1998, costs and disbursements. On April 5, 2004, Rudolf and Angelika Ernst filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. On July 27, 2004, Carey and his firm filed a proof of claim in the amount of $335,319.20, representing: (a) the $72,274.14 judgment amount; (b) pre-judgment interest in the amount of $48,900.88; (c) disbursements for August and September 1998 in the amount of $2,424.79; (d) disbursements for the period beginning October 1998 and ending July 6, 2004, in the amount of $13,526.98; (e) post-judgment interest in the amount of $2,298.91, through July 27, 2004; and (f) $195,893.50 in attorneys fees associated with the collection action through May 2004. *See Rider to Carey Proof of Claim at 2-3*. On December 17, 2004, Carey and his firm filed an application for attorneys fees associated with the collection action in the amount of $205,707.78. Counsel for the Debtors filed an objection to the fee application.

### Rule of Law

The creditor's fee application is governed by the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases.

The Debtors' objection to claims is governed by 11 U.S.C. § 502(b)(1) and § 502(b)(4).

Section 502(b)(1) provides in relevant part that:

> Except as provided in subsections (e)(2), (f),(g),(h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that –
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

Section 502(4) provides:

> If such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services.

## Discussion

The objection to claims which preceded the filing of the fee application will be discussed first.

<u>The Debtors' Argument</u>

The Debtors object to the claim in its entirety. The Debtors believe that the amount paid to Carey to date exceeds the "reasonable value" of services rendered under § 502(b)(4). The Debtors contend that: (1) the bankruptcy court should determine the allowability of fees and interest based on a reasonableness standard; (2) the State Court judgment does not operate as res judicata, precluding the bankruptcy court from determining the "reasonableness" of legal fees; and (3) a pro se attorney should not be permitted attorneys' fees as collection costs under a retainer agreement. Should this Court find that some fees are allowable, the Debtors object to any award in excess of the $72, 274.14 judgment amount.

<u>Carey's Argument</u>

5

Carey argues that the Debtors' Objection to Claim No. 9 should be denied because it is without merit. Carey contends that the Debtors are attempting to re-litigate the issues decided by the State Court. Carey adds that the State Court judgment is res judicata with respect to both the amount and liability for both the legal fees associated with the extradition proceedings and the collection fees. Carey further argues that a *pro se* attorney is not prohibited from collecting attorneys' fees. In sum, Carey argues that the claim should be allowed in full at the 12% interest rate, or in the alternative, the claim should be allowed in full using the statutory 9% interest rate.

**Analysis**

The Debtors' Objection to Claim No. 9

This Court gives Full Faith and Credit to the State Court judgment in the amount of $72,274.14. This amount represents the unpaid balance on the 'account stated' at the time Carey terminated his representation of Rudolf Ernst in the extradition proceeding.

In addition to the $72,274.14 judgment amount, the state court also awarded pre-judgment interest from July 31, 1998. This Court deems the pre-judgment interest portion of the claim allowed in its entirety. *See Carey Evidentiary Hearing, Ex. "9."* This Court has jurisdiction to determine whether pre- and post-judgment interest is allowable under the Bankruptcy Code. In In re United States Lines, Inc., 199 B.R. 476 (Bankr. S.D.N.Y. 1996), this Court held that the doctrines of full faith and credit, res judicata, and collateral estoppel did not prevent a debtor or representative of the debtor's estate from challenging the interest portion of a state court judgment. Id. 199 B.R. 476, 480 (Bankr. S.D.N.Y. 1996). The purpose of the bankruptcy court's review is to determine "to what extent the judgment is enforceable against the Debtor's estates pursuant to the Bankruptcy Code, not to

decide the validity of the state court judgment." Id. Because the claims allowance process is within the exclusive jurisdiction of the bankruptcy court, the issue could not have been raised in state court. Id. To aid in its determination as to whether and to what extent interest may be enforceable against the Debtors' estate this Court relies on § 502(b) of the Bankruptcy Code and the facts and circumstances of this case.

According to the legislative history of 11 U.S.C. § 502, Congress intended that subsection (b) prescribe the grounds on which a claim may be disallowed by the bankruptcy court when there is an objection to a proof of claim. Paragraph (1) [of § 502(b)] requires disallowance if the claim is unenforceable against the debtor **for any reason** (such as usury, unconscionability, or failure of consideration) other than because it is contingent or unmatured. A creditor is required to prove that his claim is free from usury. (H.R. Rep. No. 595, 95th Cong, 1st Sess 352-354 (1977); S Rep No. 989, 95th Conf 2d Sess 625 (1978)).

Arguably, the 12% contractual interest rate is inflated, given the fact that the statutory rate is only 9%, but it is not usurious. The contractual interest rate should have been recalculated at the commencement of the contract, in keeping with the statutory provisions, but the contract terms were not unconscionable. Carey now seeks payment for six years of interest on the balance of $72,274.14. The Bankruptcy Code contemplates the allowance of claims for pre-petition interest. *See* In re United States Lines, Inc., 199 B.R. 476, 482 (Bankr. S.D.N.Y. 1996); *see also,* In re Chateaugay Corp., 109 B.R. 51, 52 (Bankr. S.D.N.Y. 1990), *aff'd*, 130 B.R. 403 (S.D.N.Y. 1991)(where the court found that pre-petition interest otherwise due as a matter of contract or law will generally be fully allowed as part of a claim). In this case, this Court finds that the portion of the claim for pre-judgment

interest was "due and payable" under the terms of the contract as of the petition date and is enforceable against the Debtors' estate. *See* In re Brown, 310 B.R. 341, 346 (Bankr. N.D.Ohio 2004)(holding that "while a simple claim in bankruptcy is afforded a very broad reach, the language of § 502(b) limits a creditor's recovery from estate assets to the amount that the creditor would have otherwise been entitled to receive at the time the debtor filed for bankruptcy"). However, interest payments of this nature should conform to the statutory rate and only be allowed for a finite period, if not, attorneys would bill needless hours on unrelated matters for the sole purpose of racking up interest on a legitimate account stated. This Court finds that such is the case here. Accordingly, pre-petition, pre-judgment interest on the $72,274.14 balance will be allowed at the statutory rate of 9% from the period beginning July 31, 1998 and ending on April 4, 2004.

Inasmuch as this creditor's claim includes post-petition interest, such interest is disallowed in its entirety. Unsecured creditors are not entitled to post-petition interest on their claims under Section 502 of the Bankruptcy Code, because all debts and interest (whether pre- or post-judgment), cease to accrue as of the petition date. In re United States Lines, 199 B.R. 476, 481 (Bankr. S.D.N.Y. 1996) *citing* Vanston Bondholders Protective Comm. V. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

This Court notes that the $72,274.14 judgment included not only interest, but costs and disbursements also. In fact, in his July 28, 1998 Affidavit, Michael Q. Carey, acknowledged that Rudolf Ernst failed to pay disbursements and costs for the period May 1, 1998 to June 20, 1998. Carey withdrew representation on or about July 31, 1998. Accordingly, this Court finds that costs and disbursements related to the $72,274.14 judgment amount are allowed for the period beginning May 1,

1998 through and including July 31, 1998. This amount represents the reasonable amount owed on the account stated.

Carey's Fee Application for Collection Costs

Costs and disbursements accruing after July 31, 1998 are associated with Carey's collection efforts. In its March 26, 2004 decision, the New York Supreme Court granted the "third" (account stated) cause of action and severed the claim for collection costs recoverable under the Agreement. Collection costs were to be determined in a separate State Court trial. Since the bankruptcy filing stayed the State Court proceeding, the determination of entitlement to collection costs is properly before this Court, and is the subject of the fee application.

In general, collection costs will be allowed only to the extent that they have a basis in the contract, under state law, and also survive the "reasonable test" under Section 502(b) of the Bankruptcy Code. It is undisputed that Carey's right to seek collection fees in the event of the Debtors' default was contemplated in the contract. Similarly, New York law recognizes that collection fees necessarily include the reasonable allowance of attorneys' fees. In re United Merchants and Manufacturers, Inc. v. Equitable Life Assurance Society of the United States, 674 F.2d 134, 139 (2d Cir. 1982). Lastly, a creditor's fee application must be deemed "reasonable" under the Bankruptcy Code. It is evident from Carey's inconsistent time records, unverified disbursement requests and the nearly three-year gap in activity on the state court docket, that Carey's collection efforts were overstated. Subsequent to withdrawing from the Ernst case, Carey and his firm dedicated an inordinate amount of time to its collection efforts against Ernst. The facts indicate that the State Court case was filed on or about August 13, 1998. On September 9, 1998, the Ernsts filed their counterclaim and on

9

October 6, 1998, Carey filed a reply. *Supreme Court of the State of New York, Docket Reports, Carey Evidentiary Hearing Ex. "8"*. The case seemed to be well under way, and then on or about December 14, 1998, the parties commenced discovery. Id. Thereafter no docket entries were made during the years 1999, 2000 and for most of 2001. Nevertheless, Carey and his firm billed roughly $33,776.00 in fees and expenses for those years, allegedly related to discovery efforts associated with the collection of his fees. Id. On March 1, 2002 and December 16, 2002, the Carey firm billed $1679.00 solely for legal research! *Debtors' Objection to Claims, Ex. "B"*. The total requested disbursements for computer/legal research during the entire four year period was nearly $5,000.00. Some of the disbursement entries do not meet the United States Trustee Guidelines for Fee Applications requiring that the name and invoice number of computerized legal services such as Lexis and Westlaw be specifically indicated on the disbursement record. Records are missing and incomplete for the years 1998, 1999 and 2000. Under the circumstances, Carey has not met his burden of showing that the collection costs are valid and fall within the ambit of legal costs necessarily incurred in a collection action of this nature. Courts have awarded collection costs in bankruptcy claims if the unsecured or undersecured creditor claimant has a right to such costs, which right is valid under state law. In Re Woodmere Investors, Limited Partnership, 178 B.R. 346, 354 (Bankr. S.D.N.Y. 1995) However, a creditor's entitlement to such fees is subject to forfeiture if the creditor fails to support his claim with proper documentation. In addition, the creditor has shown no willingness to mitigate the damages over the six year period, and now requests nearly four times the original award. This Court finds the collection efforts were not substantiated, nor are they reasonable under the Bankruptcy Code. Therefore, Carey's fee application for collection costs is disallowed in its entirety.

## Conclusion

Accordingly, Carey's fee application requesting collection fees is DENIED. The Debtors' Motion Objecting to Claim No. 9 filed by Michael Q. Carey and Carey & Associates is GRANTED in part, as to post-petition interest, attorneys' fees, disbursements and costs associated with collection activities; and DENIED in part, as to the $72,274.14 judgment; pre-petition interest on that judgment amount which will be calculated at the 9% interest rate. Debtors' counsel will settle an order on five (5) business days' notice consistent with this opinion.

February 22, 2005 /s/ Cornelius Blackshear
Hon. Cornelius Blackshear, USBCJ