Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MICHAEL Q. CAREY D/B/A CAREY
& ASSOCIATES,

                        Appellant,                          05- Civ -03958 (RPP)
                    v.                                      05- Civ -03332 (RPP)
                                                            05- Civ -03959 (RPP)

                                                    **OPINION AND ORDER**

RUDOLF J.O. ERNST and ANGELIKA L. ERNST,

                        Debtors.
---------------------------------------------------------------X


**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Appellant Michael Q. Carey d/b/a Carey & Associates ("Carey" or "Appellant") appeals

from two separate rulings of Judge Cornelius Blackshear, United States Bankruptcy Judge,

Southern District of New York ("Bankruptcy Court").  On March 3, and March 7, 2005, Carey

filed a notice of appeal and an amended notice of appeal from the February 22, 2005 ruling of

Judge Blackshear, "Opinion on the Fee Application of Michael Q. Carey and Carey & Associates

and the Related Debtors' Objection to Claim No. 9 Filed by Michael Q. Carey and Carey &

Associates" ("Fee Opinion") and his March 7, 2005 Order entered thereon.  For the reasons set

forth below, the Bankruptcy Court's Fee Opinion denying Carey's application for fees is

remanded, and the denial of Carey's post-petition interest, and reduction of Carey pre-petition

pre-judgment interest from 12% to 9% is upheld.  On March 23, 2005, Carey filed an appeal

from a March 17, 2005 ruling of Judge Blackshear, "Sua Sponte Order Denying Motion for

Leave to Commence an Adversary Proceeding" ("Adversary Order").  That Order is affirmed.



**BACKGROUND**

This case arises out of an attorney's fee litigation initiated in New York Supreme Court, New York County, in August 1998, which resulted in an opinion dated March 26, 2004, by Justice DeGrasse awarding Carey his outstanding fees on his claim of breach of contract and account stated and severing Carey's claim for fees incurred in attempting to collect his outstanding fees. (State Court Op.)[1]

Ten days later, on April 5, 2004, Debtors filed for bankruptcy in a voluntary petition under chapter 13 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"). (Fee Op. at 4.) On July 27, 2004, Carey filed a Proof of Claim with the Bankruptcy Court in the amount of $335,319.20. This included: (1) the judgment of $72,274.14; (2) pre-judgment interest on the $72,274.14, at Retainer Agreement rate of 12% per annum, totaling $48,900.88 for the period of July 31, 1998 through March 19, 2004; (3) post-judgment interest on the $72,274.14, at the statutory rate of 9% per annum, totaling $2,298.91 for the period of March 20, 2004 through July 27, 2004 (4) attorneys' fees from the collection efforts totaling $195,893.50; and (5) disbursements during the collection action totaling $15,951.77;. (Id.)

Pursuant to an order of the Bankruptcy Court, dated December 9, 2004, Carey filed a Fee Application, totaling $205,707.78, plus 12% interest, with the Bankruptcy Court on December 17, 2004, relating solely to his claim for fees and disbursements incurred in pursuing the Collection Case and defending against the Debtors' counterclaims of fraud, malpractice, and

---

[1] Carey's complaint included a claim against Rudi Ernst Jr., the Debtors' son, based upon an alleged oral promise to pay Dr. Ernst's legal fees. The court found this claim not viable because a "special promise to answer for the debt of another is unenforceable unless in writing." (State Court Op. at 3.) The Appellate Division, First Department vacated that decision and reinstated the claim against Rudi Ernst, Jr. (State Court II Op.) Rudi Ernst, Jr. seeks reconsideration. (Letter of October 21, 2005, from Debtors' counsel.)

breach of fiduciary duty.  (Carey Fee App., Appellant's App. Ex. F).  Debtors filed their

Objections to Carey's Fee Application on January 7, 2005.  (Fee Op. at 4.)

On January 20, 2005, the Bankruptcy Court scheduled an evidentiary hearing for

February 22, 2005.  (Jan. 20, 2005 Tr.)  It also directed each party mark its exhibits, confer on

whether or not there would be any objections to the exhibits, and prepare an exhibit list and

provide the exhibits, pre-marked, to the Bankruptcy Court and each other before the hearing.

(Id.)[2]  At the January 20, 2005 conference, Debtor's counsel objected to the format of Carey's

fee application, suggesting that it did not conform to the Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases ("Guidelines").  (Id.)  The

Bankruptcy Court agreed that Carey's fee application did not conform, but stated that the issue

would be heard at the evidentiary hearing scheduled for February 22, 2005.  (Id.)

**DISCUSSION**

**A. Standard of Review**

Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure ("FRBP" or

"Bankruptcy Rules") and the case law thereunder, a bankruptcy court's conclusions of law are

subject to de novo review.  See In re Miner, 229 B.R. 561, 564-565 (B.A.P. 2d Cir. 1999); In re

Macrose Industries, Corp., 186 B.R. 789, 797 (E.D.N.Y. 1995).  "A de novo review allows [the

court] to decide the issue as if no decision had previously been rendered."  In re Miner, 229 B.R.

at 565.

In contrast, a bankruptcy court's findings of fact are subject to a clearly erroneous

standard.  See Fed. R. Civ. P. 52(a); Bankruptcy Rule 8013.  A finding of fact is clearly

erroneous within the meaning of Bankruptcy Rule 8013 when

---

[2] During oral argument before this Court, the parties stated that they had exchanged exhibits
before the February 22, 2005 hearing (Aug. 12, 2005 Trans. at 42), though the Bankruptcy Court docket
sheet does not reflect such a submission of exhibits between January 20, 2005 and February 22, 2005.

although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. While the trial court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden. If two views of evidence are possible, the trial judge's choice between them cannot be clearly erroneous. To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old unrefrigerated dead fish.

In re Miner, 229 B.R. at 565 (internal quotation marks and citations omitted).

**B. Fee Application**

On February 22, 2005, the date scheduled for the evidentiary hearing, the Bankruptcy Court did not hold an evidentiary hearing. Instead the Court issued an opinion which: (1) gave full faith and credit to the State Court judgment on Carey's breach of contract and account stated claims for $72,274.14, the unpaid balance when Carey terminated his representation of Ernst in the extradition proceeding; (2) allowed the pre-petition interest on the $72,274.14 balance for the period of July 31, 1998 to April 4, 2004, but reduced it from 12% to the statutory rate of 9%; (3) denied Carey post-petition interest on the Supreme Court judgment; (4) allowed Carey "costs and disbursements related to the $72,274.14 Supreme Court judgment . . . for the period beginning May 1, 1998 through and including July 31, 1998"; and (5) disallowed in its entirety Carey's application for attorney's fees and collection costs incurred after July 31, 1998. (Fee Op. at 6-11.)[3]

At the outset of its opinion, the Bankruptcy Court stated, "the creditors fee application is governed by the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases. The Debtors' objection to claims is governed by 11 U.S.C. § 502(b)(1) and § 502(b)(4)." (Id. at 4.) The Bankruptcy Court denied Carey attorney's fees and purported costs incurred in the collection action ($205, 707.78) on two grounds: 1) Such a claim

---

[3] Judge Blackshear implemented this opinion with his March 7, 2005 Order.

must meet the "reasonable" test under § 502(b)(4) (See In re United Merchants & Mfrs., Inc.,

674 F. 2d 134, 139 (2d Cir. 1982)); and 2) the claim must be "substantiated" by 'proper

documentation." (Fee Op. at 9-10.) The Court found that based on Carey's inconsistent time

records, unverified disbursement requests, and a three year gap in activity on the state docket,

Carey's collection efforts were overstated. (Id. at 9.) The court held that "Carey has not met his

burden of showing that the collection costs are valid and fall within the ambit of legal costs

necessarily incurred in a collection action of this nature." (Id. at 10.) Without citing authority,

the court found that the "creditor's entitlement to such fees is subject to forfeiture if the creditor

fails to support his claim with proper documentation," and found Carey's collection efforts

unsubstantiated and not reasonable under the Bankruptcy Code. (Id.)

> Sections 502(b)(1) and 502(b)(4) of Title 11 of the United States Code read as follows:
>
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if
> such objection to a claim is made, the court, after notice and a hearing, shall
> determine the amount of such claim in lawful currency of the United States as of
> the date of the filing of the petition, and shall allow such claim in such amount,
> except to the extent that--
>   (1) such claim is unenforceable against the debtor and property of the debtor,
> under any agreement or applicable law for a reason other than because such claim
> is contingent or unmatured;
>   . . . .
>   (4) if such claim is for services of an insider or attorney of the debtor, such
> claim exceeds the reasonable value of such services;

Technically, the fees involved here are not related to the services of an insider or attorney of the

debtor, but the Bankruptcy Court apparently elected to utilize this section pursuant to its

equitable power.[4]  Bankruptcy Rule 3007 provides that once an objection is filed, a "copy of the

---

[4] Though the case before this Court involves a prior state judgment award of legal fees, such
claims are also subject to § 502(b). Kohn v. Leavitt-Berner Tanning Corp., 157 B.R. 523, 527 (N.D.N.Y.
1993)("Section 502 (b) requires the bankruptcy court to undertake a two-part analysis. First the court
must 'determine the amount of [a creditor's] claim as of the date of the filing of the petition . . . .' In a
case such as the one at bar, this means accepting as non-reviewable the amount of the claim as determined
by the state court. This figure then forms the basis for the second part of the analysis, wherein the court

objection with notice of the hearing thereon shall be mailed or otherwise delivered to the

claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing."

Although these sections suggest that a hearing is required when an objection has been asserted,

reading 11 U.S.C. § 502(b) in conjunction with 11 U.S.C. § 102(1),[5] "makes it clear that a

hearing is not statutorily required, but only that parties are given an opportunity for a hearing and

may have a hearing if it is so requested." In re D.A. Elia Construction Corp., No. 99 Civ. 0546,

2000 WL 1375739, at * 4 (W.D.N.Y. Sept. 22, 2000) (quotation marks omitted).

Although neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure

requires a full evidentiary hearing (See In re Manhattan Woods Golf Club, Inc., 192 B.R. 80, 84-

85 (S.D.N.Y. 1996)), on November 4, 2004, November 18, 2004, and January 20, 2005, Judge

Blackshear gave the parties repeated notice that an evidentiary hearing would be held.  On

January 20, 2005, he scheduled the hearing for February 22, 2005.  (Nov. 4, 2004; Nov. 18,

2004; and Jan. 20, 2005 Trs.)  At the January 20, 2005 conference, disputes arose between the

attorneys over the comprehensiveness and intelligibility of Carey's fee application, and its

compliance with the Guidelines, to which Judge Blackshear responded, "We will get into that at

the hearing date."  (Jan. 20, 2005 Tr. at 58.)  He also suggested that Carey would "have to

explain" his time sheets to Mr. Fox, Debtor's counsel, at the hearing as well.  (Id. at 59-60.)

---

determines how much of the claim should be allowed. Applying the principles of equity inherent in the code, the court looks behind the judgment to ascertain the relationship between the parties"); See also Pepper v. Litton, 308 U.S. 295, 307 (1939)("The bankruptcy court in passing on allowance of claims sits as a court of equity").

[5]  Section 102 reads in pertinent part:
(1) "after notice and a hearing", or similar phrase-
    (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
    (B) authorizes an act without an actual hearing if such notice is given properly and if-
        (i)    such a hearing is not requested timely by a party in interest; or
        (ii)    there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]

After some confused inquiries between the parties over the clarity of Carey's time sheets, Judge
Blackshear stated, "You know what?  I have heard enough," and ended the conference, again
repeating that the scheduled evidentiary hearing date would be held, "February 22 at 10:00 a.m."
(Id. at 60-61.)

Because Judge Blackshear repeatedly stated on January 20, 2005, that the parties would
have an opportunity to address their dispute and make their further arguments at an evidentiary
hearing, he should have allowed Carey an opportunity to present his evidence and to argue in
support of his claim before the court reached a decision.

In similar circumstances, Bankruptcy judges have been reversed when a party has not
received the opportunity to present evidence.  In Morton v. Morton (In re Morton), the
Bankruptcy Appellate Panel for the Sixth Circuit held that the Bankruptcy Court erred in
determining that the debtor had "failed to meet her initial burden of establishing a colorable
challenge to the proofs of claim" because the court ruled on the objection "without giving the
parties the opportunity to present evidence." 298 B.R. 301, 307-308 (B.A.P. 6th Cir. 2003).  In
Morton, as in this case, the parties believed an evidentiary hearing on the matter would be held at
a later date, but the Bankruptcy Court instead decided to issue its opinion without providing the
hearing.  (Id.)  The Bankruptcy Appellate Panel found that "[t]he evidence that the bankruptcy
court may have needed to determine that Debtor had met her initial burden might have been the
evidence that Debtor intended to offer at an evidentiary hearing.  Debtor understood that she
would have the opportunity to present such evidence . . . ." The Bankruptcy Appellate Panel
reversed the Bankruptcy Court and remanded with instructions "to provide Debtor with an
opportunity to present evidence." (Id. at 309.)  Moreover in In re Rene Press, Inc., the
Bankruptcy Appellate Panel for the First Circuit vacated and remanded a decision of the

7

Bankruptcy Court on similar grounds. 29 B.R. 446 (B.A.P. 1st Cir. 1983). In <u>Rene Press</u>, the Bankruptcy Court had "made several statements during the initial hearing that would lead a reasonable attorney to believe that further opportunity for argument, whether by written response or additional hearing, would be provided" and then "without allowing further opportunity to argue this issue, the court entered its order denying recovery based on this very ground." (<u>Id</u>. at 447-448.) The Bankruptcy Appellate Panel held that, "[b]y the court's own statements, appellant was led to believe that an opportunity for further argument would be given. Under these circumstances, it was unfair to deny [appellant's] request without an additional hearing." (<u>Id</u>. at 448.)

Here, the Bankruptcy Court denied Carey's fee application in its entirety, stating that "a creditor's entitlement to such fees is subject to forfeiture if the creditor fails to support his claim with proper documentation." (Fee Op. at 10.) His only finding of lack of documentation however was for the improper disbursement entries for legal research. He made no finding that Carey did not meet his burden of making a prima facie claim for any collection costs. (<u>Id</u>. at 10.)

Nor did Judge Blackshear find that Carey had not properly executed and filed a proof of claim. "A properly executed and filed proof of claim constitutes prima facie evidence of the validity of the claim. To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." <u>In re Reilly</u>, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000)(citing Fed. R. Bankr. P. 3001(f).)

Although Judge Blackshear concluded with the statement, "This Court finds the collection efforts were not substantiated," this Court's review of the record in Bankruptcy Court showed that Carey had filed handwritten daynotes broken down to less than a tenth of an hour for services rendered in drafting the complaint, redrafting the complaint, arranging effective

8

service on the defendants, review of answer, preparation for deposition of the Debtors, as well as other services. All daynotes reflected the provider, the provider's time expended, and some description of the nature of the legal services.[6] The daynotes also suggest however that a number of services were not directed to recovery of a judgment but were typical of post-judgment discovery efforts or attempts to obtain judgment against the Debtors' son.

In any event the disallowance in its entirety of Carey's application for his attorney's fees and costs in pursuing the collection action is not supported by the record in the Bankruptcy Court. Accordingly the decision is reversed and the claim is remanded for a determination of what fees and disbursements if any should be allowed, as contemplated by 11 U.S.C. § 502(b).

*Reduction of Interest from 12% to 9%*

The Bankruptcy Court disallowed Carey's post-petition interest on his claims in its entirety, and reduced his pre-petition, pre-judgment interest from 12% to the statutory rate of 9%. Carey contends that the Bankruptcy Court erred as a matter of law by not awarding Carey the contractual interest rate of 12%.[7]

Judge Blackshear acknowledged the state court judgment, but cited his own opinion in In re United States Lines, Inc., 199 B.R. 476 (Bankr. S.D.N.Y. 1996), for the proposition that the Bankruptcy Court had "jurisdiction to determine whether pre-and post-judgment interest is allowable under the Bankruptcy Code." (Fee Op. at 6.) Judge Blackshear also noted that the purpose of his "review is to determine 'to what extent the judgment is enforceable against the Debtor's estates pursuant to the Bankruptcy Code,' not to decide the validity of the state court judgment," and that "the doctrines of full faith and credit, *res judicata*, and collateral estoppel

---

[6] Confusingly, Carey also submitted computerized daynotes, evidently generated at a later date from the handwritten daynotes. The computer-generated daynotes generally omitted data necessary to determine that the services were necessary to obtaining a judgment against Debtors.

[7] The state court decision did award Carey pre-judgment "interest from July 31, 1998," but did not state the rate of interest. (State Court Op. at 4.)

9

did not prevent a debtor or representative of the debtor's estate from challenging the interest portion of a state court judgment." (Id. at 6-7; quoting In re United States Lines, Inc., 199 B.R. at 480.) Judge Blackshear reduced Carey's pre-judgment interest rate to 9% on the ground that Carey had billed "needless hours on unrelated matters for the sole purpose of racking up interest on a legitimate account stated."[8] He denied post-judgment interest, stating the judgment was allowed as a general unsecured debt. (Order of March 7, 2005.)[9]

Judge Blackshear correctly relied on the Bankruptcy Court's equitable powers to determine the allowance of claims before it. (Fee Op. at 6-7.) Just as the Bankruptcy Court has power to determine how much of the state court judgment should be allowed based on a "reasonableness" test, it may also determine what rate of interest to allow. See Kohn, 157 B.R. 523; Pepper v. Litton, 308 U.S. 295; supra note 4 and accompanying text. The Bankruptcy Court was therefore free to determine the rate of pre-judgment interest. Based on his finding that Carey had needlessly extended the date of judgment to rack up interest (see supra note 8 and accompanying text), Judge Blackshear did not err as a matter of law in reducing the rate of interest, and not only is his finding not clearly erroneous, it is supported by the handwritten daynotes. Judge Blackshear's decision to reduce the interest rate on Carey's pre-judgment claims from 12% to 9% based on his finding is therefore upheld.

## C. Adversary Order

On March 17, 2005, the Bankruptcy Court issued a sua sponte order in this Chapter 13 Bankruptcy proceeding, denying Carey leave to commence an adversary proceeding. It issued

---

[8] Review of Carey's daynotes supports the Bankruptcy Court's conclusion that Carey's claim for account stated was allowed to linger for years while he explored the defendants' assets and his claim against the Debtors' son. (Carey Fee App. and attached exhibits.)

[9] Unsecured creditors are not entitled to post-petition interest. 11 U.S.C. § 502. The petition was filed ten days after the state court opinion. (Fee Op. at 4.) The record does not reveal when judgment was entered on the state court opinion.

this order after the Section 341 meeting of creditors and after Carey had filed an adversary

complaint in the Bankruptcy Court on July 27, 2004, and amended that complaint on August 18,

2004, alleging several fraudulent transfers and naming as defendants the Debtors, their son Rudi

Ernst, Jr., EFF Ernst Fine Foods LLC, Franklin Community Bank, N.A., and Larry Heaton, as

trustee, Susan Burdzy, Kevin Burdzy, John Doe #1-10, Jane Doe #1-10, XYZ Associates #1-10.

(Appellees' Appendix, Ex. E.)  On February 2, 2005, Judge Blackshear had granted the motion

of Franklin Community Bank and Larry Heaton to dismiss without prejudice Carey's amended

adversary complaint because Carey lacked standing to file an adversary proceeding because he

had done so without leave of the court.  (Appellant's Supp. App., Exhibit A.)

On March 7, 2005, without giving notice to Franklin Community Bank and Heaton,

Carey moved for leave to commence an adversary proceeding and submitted a memorandum of

law in support of the motion dated March 7, 2005 ("Carey Mem.") (Appellees' App., Ex. B)

supported by a declaration by Carey ("Carey Decl.") with Exhibits A-W.  (Appellant's Supp.

App.)

As recited in his motion for leave to file an amended complaint, Carey was a creditor in

this Chapter 13 case, based on his claims for unpaid fees and interest.  Carey argued that he had

standing to bring the adversary proceeding which the Bankruptcy Court had previously

dismissed without prejudice on February 2, 2005, because (1) the trustee had expressly

consented to this suit by letter dated February 8, 2005, six days after the Bankruptcy Court

dismissed Carey's original adversary proceeding without prejudice[10] and (2) the suit is (a) in the

best interests of the bankruptcy estate and (b) necessary and beneficial to the fair and efficient

resolution of the bankruptcy proceeding.  (Carey Mem. at 4.)  As authority Carey relied on

---

[10] The trustee's consent consisted of an endorsement to Carey's letter to him stating, "no object."
(Appellant's App., Ex. C.)

Commodore International, Ltd. v. Gould (In re Commodore International, Ltd.), 262 F.3d 96,

100 (2d Cir. 2001) and Glinka v. Federal Plastics Mfg. (In re Housecraft Indus. USA, Inc.), 310

F.3d 64, 70 (2d Cir. 2002). (Carey Mem. at 4.) Acknowledging that the bankruptcy estate

lacked resources to bring this action on its own, Carey consented to bear the costs of the

litigation, subject to a later application for an award of attorneys' fees and costs. (Id.)

Carey advised the court that the adversary proceeding would seek to avoid two

preferential payments made within the 90 day period preceding the bankruptcy filing, pursuant to

11 U.S.C. § 547 (preferential transfers): 1) a payment to creditor North Fork Bank in the amount

of $68,320.00. (Carey Decl., Ex. E; Ernst Chapter 13 Bankruptcy Petition, Statement of

Financial Affairs, Item #3), and 2) a payment to creditor Bank One in the amount of $4,275.00

(Id., Item #3; Carey Mem. at 5-6.)[11] Carey also explained that the adversary proceeding would

seek to avoid as alleged fraudulent transfers pursuant to 11 U.S.C. § 548: (a) the 1998 transfer of

the Union Hall property by Debtors to their son Rudy on the grounds that the sale was for less

than full consideration because Debtors subsequently made some mortgage payments and paid

some maintenance expenses for the property (Carey Mem. at 9-10);[12] (b) the transfer of the

---

[11] Carey acknowledged that discovery in the dismissed adversary proceeding had shown that the Debtors had refinanced their New York apartment on March 1, 2004 in the amount of $120,000, and that the Debtors had disclosed that the $68,320.00 payment to North Fork Bank was made to pay off a prior secured loan and that the $4,275 payment of Bank One was a requirement of the refinancing. Carey stated that the adversary proceeding would seek to recover from recipients an unexplained balance of $38,000. (Carey Mem. at 6-7.)

[12] In connection with the Union Hall purchase, Rudi made a down payment of $34,000 to Debtors and obtained a mortgage loan from First Virginia Mortgage Company ("First Virginia") in the amount of $136,000, $135,181.84 of which was remitted to Debtors as the balance of the purchase price of $170,000. (Carey Mem. at 8.) He executed a deed of trust secured by the Union Hall property on September 10, 1998. (Id.) First Virginia assigned the Deed of Trust to Countrywide Home Loans, Inc. ("Country Wide"). (Id.; Affidavit of Linda Adams, Appellant's App. Ex. J, ¶ 7.) Some mortgage payments were made by Debtors when Rudi lost his job at ABC television. (Affidavit of Rudi Ernst, Jr., Appellant's App., Ex. N, ¶ 13.) On March 26, 2003, Rudi entered into Home Equity Line/Credit Agreement with Franklin Community Bank in the amount of $165,000 and thereafter increased the terms of credit as the property value increased. The outstanding loan is now $243,642.20, plus interest. (Franklin Brief at 4-6.)

Union Hall property to Rudy on the grounds that the transfer was made to secure him as a lender and was therefore not a bona fide sale (id. at 9); (c) the lien on the Union Hall property held by Franklin Community Bank in the amount of $245,000 on the grounds that Franklin Community Bank was not a bona fide purchaser in good faith and did not act in good faith (id. at 14); (d) the possibility that Defendants may be repaying the line of credit from Franklin Bank and "intentionally misled the Court" regarding earlier payments (id. at 15-16); (e) the sale on April 10, 2003, of lakefront property in Virginia assessed at $5,000 to Kevin and Susan Burdzy for $10 (id. at 16); (f) the sale on November 28, 2003 of real property in Roxbury, New York, to Laura Kramer for less than fair value (id.); and (g) the transfers in 2003 of unspecified real and personal property valued at $26,600 for less than fair value (id. at 17). (Carey Decl., Ex. E, Bankruptcy Petition, Statement of Financial Affairs, Item #2; Carey Mem. at 7-17.)

The Debtors' Objection to Motion For Leave to Commence Adversary Proceeding ("Objection," Appellant's App., Ex. D), urged the Bankruptcy Court to take note of Carey's legal fee claim of over $200,000 to collect a $72,000 judgment and the attendant burden of that litigation on the Debtors and their families and friends, and objected to his appointment to represent the estate. (Id. at 2.) The objection suggested Carey's motion selectively read transactional documents, e.g., that the Burdzy's had paid "ten dollars and other valuable considerations" for real property in Virginia when Carey had been provided with evidentiary proof in the dismissed adversary proceeding that they paid $5,000, its fully assessed value. (Id.) (See Appellees' App., Ex. F, H, Affidavit of Kevin Burdzy, dated January 18, 2005, with attached assessment.) The sale of the Roxbury, New York, property to Laura Kramer-Carini was for $8,000. (Id. at 13.) The Objection argued that the legal expense of pursuing such claims far outweighed any positive benefits and would only harass the Debtors and other parties, and delay

confirmation in this case.

After pressing procedural points, the Debtors requested that the Court apply the test in STN Enterprises, 779 F.3d 901 (2d Cir. 1985), to "determine the probabilities of legal success and financial recovery in the event of success, as well as the terms relative to attorneys' fees, and therefore, whether pursuit of the claim will benefit the estate and to justify the anticipated delay and expenses in the bankruptcy case." (Objection at 5-6; citing STN, 779 F.2d at 905-906).

The Debtors pointed out that Franklin Bank had maintained that none of the transfers were fraudulent, that Carey does not "state any law upon which the relief he alleges can be granted," and that, in any event, Carey's fees will far outweigh any benefit to the estate. (Objection at 6.)

The Debtors concluded, "after seeing Carey operate, it must be clear to the Court that he is certainly not the appropriate party to pursue a claim on behalf of the trustees. It is likely that Carey will continue to prolong this case with inappropriate and unnecessary legal proceedings."

The Objection supported by affidavits from the Debtors in Carey's dismissed adversary proceeding argued that:

(1) the preference claim against Bank One for $4,250 was required by North Fork as a condition of closing; that Bank One is entitled under Chapter 13 to a 20% distribution, and that any lawsuit would have to be brought in the state of Bank One's principal place of business (28 U.S.C. § 1409), causing the cost of recovery to exceed the amount recovered;

(2) the preference claim against North Fork Bank for $68,320.59 was made to pay off an existing security interest in the cooperative unit as part of the refinancing and that, inasmuch as it was a security interest, North Fork did not receive any more than it

14

would have recovered in a liquidation (11 U.S.C. § 547).

(3) that the fraudulent transfer claim against Franklin Community Bank is based on a refinancing in 2003 over five years after the original transfer and Carey has made no showing that the Bank was not a bona fide lender paying full consideration to the Debtors' son;

(4) that the Burdzy and Kramer transactions were bona fide sales at the assessed value of each of the properties.

The objection was supported by the affidavits of Debtors and Burdzy (Appellees' App., Ex. F). The Debtors also argued that the text of the statute itself supports their position, as the language of Sections 547 and 548 give express authority to pursue avoidance actions solely to the trustee.

Although Judge Blackshear's opinion is not a model of clarity, it is clear that the Court, after review of the adversary complaint and the motion papers, made certain determinations. First, Judge Blackshear found that there was not sufficient preliminary evidence suggesting that the Debtors intentionally misled the Court or the Chapter 13 trustee during the Section 341 meeting of creditors such that an adversary proceeding against the Debtors would be warranted. (Adv. Order at 1-2.) Second, he found that the statutory period for bringing a fraudulent transfer action for the 1998 transaction with the Debtor's son had now run, both under the state statute and under the Bankruptcy Code. (Id. at 2.) Lastly, Judge Blackshear held that Carey, as a Chapter 13 creditor, lacked standing to pursue an adversary proceeding, and that Carey offered no evidence or rationale to support an exception to this rule. (Id.)

The question of standing is dispositive in this case. Judge Blackshear examined In re STN Enterprises, 779 F.2d 901, 904 (2d Cir. 1985), a Chapter 11 proceeding, for authority to

determine whether an individual creditor had standing to commence an adversary proceeding in a Chapter 13 proceeding. (Adv. Order at 2). He noted that the Second Circuit in <u>STN</u> "found an implied, but qualified, right for creditors' committees to initiate [adversary] proceedings in the name of the debtor in possession" in Chapter 11 proceedings and that "other courts have allowed creditors committees to initiate proceedings only when the trustee or debtor in possession unjustifiably failed to bring a suit or abused its discretion in not suing to avoid a preferential transfer." (<u>Id</u>.); quoting <u>In re STN Enterprises</u>, 779 F.2d at 904. He concluded that the creditor's entitlement to bring avoidance actions is a qualified right, adding that it is "at times predicated on the standard of extraordinary circumstances." (Adv. Order at 2.)

Judge Blackshear then turned his attention to whether a Chapter 13 creditor such as Carey should be granted standing to bring an avoidance action and concluded "even if the Court could 'judicially craft' an exception to the standing rule," it would require "a showing of 'extraordinary circumstances' . . . ." (<u>Id</u>.)[13] Judge Blackshear found that "the movant has failed to show the requisite 'extraordinary circumstances'" in this case. (<u>Id</u>.) Noting that "derivative standing cases are usually granted in complex chapter 11 cases," he stated that "chapter 13 trustees are ordinarily reticent about pursuing avoidance actions in a chapter 13 case because of the nominal amount of recovery for creditors." Judge Blackshear also found that the trustee had not shown

---

[13] The "extraordinary circumstances" test was used by the district court in <u>Surf N Sun Apts., Inc. v. Dempsey</u>, to answer whether a Chapter 7 creditor could pursue a fraudulent transfer action. 253 B.R. 490 (M.D. Fla. 1999); citing <u>In re V. Savino Oil & Heating Co.</u>, 91 B.R. 655, 657 (Bankr. E.D.N.Y. 1988)("such authority might be granted upon showings of particularly extraordinary circumstances"). The <u>Surf N Sun</u> Court noted that this exception to the language of Section 548 of the Bankruptcy Code, which grants such power to bring an avoidance action <u>only</u> to the trustee, was conceived in the context of Chapter 11 cases and that at least two district courts had applied it in Chapter 7 cases. 253 B.R. at 493. The Court noted that the Bankruptcy Court's equity powers granted to it under Section 105, justify this exception to Section 548. <u>Id</u>. "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The court held, however, that in light of the Section 548 language, no such exception could be made. <u>Surf N Sun</u>, 253 B.R. at 494. In <u>In re V. Savino Oil</u>, which post-dates <u>STN</u>, the Court held that in a Chapter 11 case such authority could be granted in "particularly extraordinary circumstances." 91 B.R. at 657.

the court that he had conducted a "cost-benefit analysis to determine whether the contemplated litigation is in the best interest of *all* creditors." (Id. at 2-3)(no emphasis added).  He then denied the application.  (Id. at 3.)

Carey argues that Judge Blackshear erred in relying on STN Enterprises, because STN has been superceded by Commodore (2d Cir. 2001) and Housecraft (2d Cir. 2002).  In STN, the Court held that to give a creditor's committee standing to sue in a Chapter 11 proceeding, the Court must undertake a cost-benefit analysis before allowing the adversary suit by the creditors' committee to be filed.  779 F.2d at 905.  Commodore extended STN to allow a creditors' committee to "acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is "necessary and beneficial" to the fair and efficient resolution of the bankruptcy proceedings." 262 F.3d 96, 100 (2d Cir. 2001). Housecraft broadened Commodore slightly, to allow standing to an individual creditor, acting on behalf of the trustee if the action "is in the best interest of the estate." Housecraft, 310 F.3d 64, 71 n.7 (2d Cir. 2002).  Thus cases held, as in STN, that prior to granting approval the Court must make a cost-benefit analysis.  Judge Blackshear found that the trustee had not shown that "the contemplated litigation is in the best interest of *all* creditors." (Adv. Order at 2-3.)  Such a determination requires a court to make a cost-benefit analysis, thus essentially complying with the standard set forth in STN, Housecraft, and Commodore.

In Chapter 11 cases, the Second Circuit has granted standing to creditors' committees and to individual creditors to pursue adversary proceedings.  Commodore, 262 F.3d 96; Housecraft, 310 F.3d 64.  Nevertheless, the parties cite no parallel exception for creditors in Chapter 13 proceedings against individual debtors.  The Second Circuit has never extended its standing

exception to Section 548 to a Chapter 13 creditor, and such an exception cannot necessarily be inferred from the Chapter 11 cases because Chapter 11 and Chapter 13 are distinctly different proceedings. Individual debtors in Chapter 13 proceedings do not have the financial resources or personnel to divert time and funds to the demands of litigation that are available to corporations in Chapter 11 proceedings. The claims contemplated by Carey in his proposed adversary proceeding would have required the Debtors to devote time and legal expenses to the litigation. This Court has been unable to find any authority in other circuits or bankruptcy court opinions authorizing an exception to allow a creditors' committee or individual creditor standing to bring an adversary proceeding in a Chapter 13 case.

Shortly after the new Bankruptcy statute was enacted in 1980, Judge Schwartzberg, a highly respected judge on the Bankruptcy Court for the Southern District of New York, explained in In re Ciavarella, 28 B.R. 823, 825 (Bankr. S.D.N.Y. 1983), "the unique nature of Chapter 13 proceedings, where the debtor is given broad authority and status to effect a rehabilitation." In distinguishing Chapter 13 proceedings from Chapter 11 or Chapter 7 proceedings, Judge Schwartzberg pointed to the "entirely voluntary" nature of Chapter 13 proceedings, the limited powers of the trustee who "serves an administrative function," the rehabilitative purpose of Chapter 13, the broader benefits to the debtor, and the immateriality of "debtor's past conduct" due to Chapter 13's focus on "*future earnings* or other *future income* of the debtor." (Id. at 825-826.) With respect to standing, Judge Schwartzberg pointed out that:

> a Chapter 13 creditor is not authorized to exercise the avoiding powers prescribed in Code § 547(b) or Code § 549(a). If creditors in a Chapter 13 case who received preferential or avoidable transfers were answerable to the other creditors in the case, so that Chapter 13 creditors might shoot it out against each other while the Chapter 13 debtor stood by passively without having a choice in the matter, the net result could be the demise of the Chapter 13 case.

18

(Id. at 825).[14]

Other courts have followed Judge Schwartzberg's reasoning, holding that, unlike a

Chapter 11 debtor, "a Chapter 13 debtor does not have standing to independently assert the

trustee avoidance powers." Ryker v. Current (In re Ryker), 315 B.R. 664, 667 (Bankr. D.N.J.

2004); see also In re Binghi, 299 B.R. 300, 306 (Bankr. S.D.N.Y. 2003) ("The plain and

unambiguous statutory language of Sections 1303 and 544(a), the Supreme Court decision in

Hartford Underwriters and overwhelming case law compel the conclusion that Chapter 13

debtors do not have standing to assert trustee's avoidance powers.") See also, In re Milam, 37

B.R. 865 (Bankr. N.D. Ga. 1984)(denying standing to a Chapter 13 creditor who sought to set

aside debtor's conveyance of property to his wife as fraudulent, because this power resides solely

with the trustee.)

Judge Blackshear did not find, as Carey argues, that a creditor could not have standing to

bring an adversary action in a Chapter 13 proceeding. He held that a Bankruptcy Court, using its

equitable Section 105 powers, might grant such an exception to the standing provisions in the

Code upon a showing of "extraordinary circumstances." He found that Carey presented no

evidence that such circumstances existed here, and that the trustee had not made "a cost-benefit

analysis to determine whether the contemplated litigation is in the best interest of *all* the

creditors." (Adv. Op. at 2-3.)[15]  On appeal, Carey has not shown that Judge Blackshear's finding

of fact is clearly erroneous. Carey's fraudulent transfer claims – against the Burdzy's and

Kramer-Carini –suggest a minimal, if any, likelihood of recovery in these actions, Carey pointed

---

[14] Though Ciavarella only dealt with §§ 547(b) and 549(a), the reasoning asserted in that case would apply equally to § 548.
[15] Indeed the evidence before Judge Blackshear consisted of a letter from Carey to the trustee, which did not enclose his proposed complaint or describe the various actions Carey was actually contemplating, beyond saying that he sought "to set aside fraudulent conveyances and to avoid preferences." The trustee in turn offered no indication of his thought processes, simply endorsing the letter, "no object." (February 7, 2005 Letter to Jeffrey Sapir, Appellant's App., Ex. C.)

to no indicia of any fraudulent transfer, and any possible recovery would be negligible when compared with the cost of pursuing either one. Similarly, Carey pointed to no evidence that the Franklin Bank, the holder of the Union Hall mortgage, was not a bona fide lender for value. Carey's claims regarding fraud in the 1998 transfer of the Union Hall property to Debtors' son and subsequent mortgage and maintenance payments by Debtors are not so clearly maintainable that this Court could find that Judge Blackshear's finding was an abuse of discretion. Carey's argument that the Debtors' son was a lender to the Debtors and not a purchaser of the Union Hall property had no evidentiary support. Carey's preference claims against North Fork Bank and Bank One evolved into a claim, not against either of those creditors, but into a claim of "concealed funds" from the March 2004 apartment refinancing based entirely on unsubstantiated speculation over how the balance of $38,000 was disposed of pre-petition, any portion of which, even if it can be considered a preference and can be recovered for the bankruptcy estate, was unlikely to exceed the litigation costs in pursuing the unidentified beneficiaries. It was not unreasonable for Judge Blackshear to conclude that, under these circumstances, authorizing an adversary action containing these diverse claims was unlikely to provide additional assets to the Bankruptcy estate and would be offset by the costs of recovery. Furthermore, allowing the adversary proceeding would embroil the Debtors in a number of litigations and adversely affect their ability to pay off the creditors in this Chapter 13 proceeding out of "future earnings or other future income" of the Debtors. On balance it is clear that Judge Blackshear's finding that Carey had not shown that the contemplated litigation was in the best interests of all creditors, had support in the record before him.

Since the Second Circuit has not crafted an exception to the standing rule for Chapter 13 creditors, and since Judge Blackshear found both that there were no extraordinary circumstances

20

sufficient to merit such an exception, and since neither Carey nor the trustee had shown that the benefits of such an action would outweigh the costs, the decision of the Bankruptcy Court denying standing to Carey to commence an adversary hearing was not clearly erroneous and is upheld.

**CONCLUSION**

For the foregoing reasons, the decision of the Bankruptcy Court is upheld with respect to its denial of Carey's post-petition interest, reduction of Carey pre-petition, pre-judgment interest from 12% to 9%, and its denial of Carey's motion for leave to commence an adversary proceeding. With respect to the Bankruptcy Court's denial of Carey's fee application in its entirety, this appeal is remanded to the Bankruptcy Court for further findings consistent with this opinion.

IT IS SO ORDERED.

Dated: New York, New York
       November 8, 2005

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Order sent to:

**Attorneys for Appellant**

Carey & Associates LLC
521 Fifth Avenue, Suite 3300
New York, NY 10175-3399
Attn:  Michael Q. Carey
       Natasha P. Concepcion
Tel:   212-758-0076
Fax:   212-758-0069

21

**Attorney for Appellees Rudolf J. Ernst and Angelika L. Ernst**

Koerner Silberberg & Weiner, LLP
112 Madison Avenue, 3rd Floor
New York, NY 10016
Attn:  Joseph L. Fox
Tel:   212-689-4400
Fax:   212-689-3077

**Attorneys for Appellees Franklin Community Bank, NA and Larry A. Heaton**

DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, NY 10020-1104
Attn:  Christopher Campbell
       Thomas R. Califano
       Vincent J. Roldan
Tel:   212-835-6000
Fax:   212-835-6001

DLA Piper Rudnick Gray Cary US LLP
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209
Attn:  Richard M. Kremen
       Jodie E. Buchman
Tel:   410-580-3000
Fax:   410-580-3001