JOSEPH L. FOX, ESQ. (JF2313)
Attorney for Rudolf Ernst and Angelika Ernst,
Debtors/Appellees
60 East 42nd Street, Suite 2231
New York, New York 10165
(212) 949-8300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                              :  Chapter 13
IN RE:,                                       :  Case No. 04-12291-JMP
                                              :
                                              :  1:07 CV 04840 (JGK)
RUDOLF J.O. ERNST AND ANGELIKA L. ERNST,      :
                        Debtors.              :
                                              :
                                              :
                                              :
------------------------------------------------------------ X
-

## APPELLEE'S MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

This appeal is the continuation of nine years of the dogged pursuit by Appellant, an

attorney and *pro se* litigant, to collect the legal fees under a retainer agreement for his

representation of Debtor/Appellee, Rudolf Ernst, Sr.  Certain Legal Fees related to the

representation of Mr. Ernst have been allowed and are not being disputed in this appeal.

However, Debtors disputed Appellant's claim for "Collection Fees" under the terms of the

Retainer Agreement, the essential terms of which have now been deemed by the controlling

court in the jurisdiction where the action was pending to be "fundamentally unfair and

unreasonable" and "not entitled to judicial sanction and is, therefore, not enforceable." Accordingly, the claim for Collection Fees has been denied by the Bankruptcy Court.

Pursuant to an effectively overbearing and overreaching retainer agreement, Appellant argued that he had the right to receive an additional **$72,274.14**[1] for the balance of his legal fees**,** which he was awarded in a State Court Action (hereinafter referred to as the "Legal Fees"), plus the sum of **$277,667.65**[2] for collection fees and interest, including his own legal fees (hereinafter referred to as the "Collection Fees"). Though the Retainer Agreement allowed the attorney to recover his legal fees, there was no reciprocal right for the client.

The New York State Appellate Division for the First Department, the controlling local court for Appellant's claim has recently ruled that such agreements are void and unenforceable. On that basis, and pursuant to Section 501(b)(1) of the Bankruptcy Code, the Bankruptcy Court granted Debtors' motion for summary judgment and disallowed Appellant's claim, to the extent that it seeks his "Collection Fees."

This case points out why retainer agreements, precisely the type that Appellant used, are unconscionable and should not be enforced. This agreement enabled Appellant to escalate his fee to the point where the Collection Fees, including interest, were almost 385% of the judgment amount. As a result of this one-sided retainer agreement, Debtors were stuck as "captive clients" of the Appellant, punished if they were to contest a fee, and, under the terms of such a retainer agreement, Appellant was able to assert any allegation, with or without support in fact or at law, and win or lose be able to charge for his legal fees (plus earn interest on that amount at 12% per annum).

---

[1] Debtors had previously paid the sum of almost $155,000 (see p.5)

[2] For a breakdown see Page 8 herein

So eager to utilize the retainer agreement, Appellant started his collection action even before he was relieved as counsel; thus escalating the fees without any opportunity for Debtors to terminate the relationship. Yet he prolonged the State Court action for six years, accruing interest at an above market rate, without requiring any relevant, complex legal theories or procedures. Shockingly, after six years of extraneous proceedings and allegedly expending monumental time and expense, Appellant obtained summary judgment for his actual legal fees based on summary judgment on an account stated!

The Debtors filed the instant bankruptcy case promptly after entry of the judgment in the State Court on the issue of the Legal Fees but before a final determination on the claim for "Collection Fees" and before the time to appeal the State Court decision or the time to move under CPLR 2221 for reconsideration of an order because of a change in law had begun to run.[3] The automatic stay thus froze those proceedings in time.

## STATEMENT OF ISSUES PRESENTED AND THE APPLICATION OF THE APPLICABLE STANDARD OF REVIEW

Did the Bankruptcy Court err in disallowing the amended claim of Carey pursuant to §502(b)(1) of the Bankruptcy Code by relying on the case of Ween v. Dow, 35 A.D. 3d 58, 802 N.Y.S. 2d 257 (App. Div. 2007) as the applicable law for the district wherein this action is based?

[3] See Point Three herein.

Pursuant to Bankruptcy Rule 8013 of the Federal Rules of Bankruptcy Procedure (hereinafter refereed to as "Bankruptcy Rule____") and the cases thereunder, the Bankruptcy Court's conclusions of law are subject to *de novo review*. Also see In re Reilly 245 B.R. 768 (2d Cir BAP 2000).

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witness." Bankruptcy Rule 8013.

## STATEMENT OF THE CASE

In or about 1998, Rudolf J.O. Ernst (sometimes referred to as "Rudolf"), a debtor and Appellee herein, was represented by appellant/claimant Michael Q. Carey, Esq., doing business as Carey & Associates ("Carey" or "Appellant") in a certain foreign extradition proceeding in the Southern District of New York. Carey tendered for signature to Rudolf  and his wife, co-debtor/co-appellee, Angelika Ernst (hereinafter referred to as "Angelika") (Rudolf and Angelika are hereinafter referred to as "Debtors") a retainer agreement (the "Retainer Agreement") which included, among other items, interest on outstanding fees in the amount of 12% per annum, compounded monthly, and an entitlement to all collection fees, including his legal fees. There was no reciprocal right for the Debtors to collect their legal fees. See Appellant's Appendix Exhibit 1-Retainer Agreement.

During the representation, over the course of seven and one-half months Carey generated legal fees and expenses in the amount of $227,039, of which $154,765.64 was paid before July 31, 1998, leaving a balance of $72,274.14. See Appellant's Appendix Exhibit 8-Memorandum of Decision Granting Debtor Motion for Summary Judgment and Disallowing Amended Claim of

Michael Q. Carey for Attorney's Fees by United States Bankruptcy Court Judge James M. Peck at p. 5 (hereinafter referred to as the "Peck Decision."). Although Carey was relieved as counsel at his request by order dated August 17, 1998 (see Appellants Brief p. 2), prior thereto, on August 13, 1998 he commenced his action for the balance of his fee. (See Appellant's Appendix Exhibit 8-Peck Decision at p. 5) This was done notwithstanding Appellees efforts to resolve the dispute prior to the filing of complaint, which Appellant does not dispute. See Appellee Appendix A- Motion of Debtors/Appellees for Summary Judgment Dismissing, Disallowing and Expunging the Amended Claim of Michael Q. Carey d/b/a Carey and Associates dated October 16, 2006, as such claim relates to certain "Collection Fees" sought by Appellant and as more fully discussed herein, which motion was dated January 17, 2007 (hereinafter referred to as "Motion for Summary Judgment")-Exhibit C Affidavit of Michael Q. Carey, p. 1, 3. Judge Blackshear noted in his opinion that "Carey admits that he refused an offer in the summer of 1998, (made while Ernst was still incarcerated) to settle the balance of the fee and disbursement with a $50,000 payment spread over a two year period and secured by a mortgage on the Ernst's apartment. See Appellants Appendix Exhibit 3, Decision of the Honorable Cornelius Blackshear, February 22, 2005, at P. 3 (hereinafter referred to as the "Blackshear Decision").

These fees were generated, in large measure, with six bail applications and three appeals in an extradition case. This was done notwithstanding that Appellant admitted that he did not have prior experience in extradition proceedings, and was told by Judge Pittman at his first appearance, that bail is generally unavailable in these types of cases. See Appellee Appendix Exhibit A, Motion for Summary Judgment, Affidavit of Rudolf J.O. Ernst in Support of Debtors' Motion to Claim (hereinafter referred to as the "Ernst Affidavit") , P. 8.

A review of Carey's time sheets submitted on behalf of his fee application (see Appellee's Appendix A –Motion for Summary Judgment-Ernst Affidavit-Exhibit J-Debtors' compilation of Carey's time sheets) and Carey's Amended Application for Final Professional Compensation, Docket No. 122, will show that he did absolutely nothing for two years from January 1999 to January 2001.  Indeed, this is ironic since Appellant did not delay in commencing his collection action, not even waiting until he was officially relieved from his representation, but he then did almost nothing to reduce his claim for fees to judgment for two years, all the while accruing interest at the rate of 12% per annum.  Id.

It can be observed that Judge Peck and Judge Blackshear before him, were truly repulsed by the use of the Retainer Agreement by Carey in ratcheting up fees against his "captive client."

As presented to the court below, in most cases, the collection efforts were unnecessary, inappropriate, and often frivolous. For example, within the collection action, Carey sued the son of the Debtors/Appellees, Rudi Ernst, Jr. ("Rudi") based on an oral personal guarantee. Carey was ultimately denied this relief by summary judgment of the New York State court since a personal guarantee must be in writing. NYS General Obligations Law §7-501. See Appellant's Appendix Exhibit 2- Decision of State Court Dated March 19, 2004, J. DeGrasse at p. 4.(hereinafter referred to as the "State Court Decision"). (This opinion was upheld on Appeal. See Carey & Associates v. Ernst,  App. Div, 1st Dept. 2005, NY Slip Op-07614 )

Though the Bankruptcy Court made its determination exclusively on the legal issues, it observed that the fees might not have been so high if Carey did not have the retainer agreement to rely upon (see Appellant's Appendix 8-Peck Decision p. 6).  The Court observed that the fees

are disproportionate in relation to the balance of unpaid fees and that a rational litigant without resource to a potential source of repayment ordinarily would not spend more to collect a debt than the amount in issue.  Id.

In another effort to unfairly use the Retainer Agreement to generate unnecessary fees, Appellant attempted to sue in New York, under New York Debtor and Creditor Law alleging a fraudulent conveyance of real property located in the State of Virginia[4]. The New York State Court refused to allow Carey to amend his complaint to allege this cause of action because as the Court noted, such action must be brought in the state where the real property is located and is subject to the laws of that state. See Appellee's Appendix A-Motion for Summary Judgment, Exhibit O, Decision of Judge DeGrasse dated November 4, 2003 denying Appellant's motion to pursue this claim in New York. Appellant also extensively engaged in what is usually considered post-judgment procedures before he obtained his judgment.

Ultimately, Appellant obtained his judgment for $72,314, after six years, upon his motion for summary judgment based on account stated. This was not rendered after a trial or any other evidentiary hearing but simply on the fact that the account stated was "based upon bills sent by plaintiff to [Appellees]…and [Appellees] make no claim that they objected to the bills before this action was commenced." See Appellants' Appendix Exhibit 2, State Court Decision at p. 2.

Carey claims that he was granted judgment for his "Collection Fees." Debtors dispute that allegation. Judge DeGrasse directed the clerk to enter judgment in favor of plaintiff against defendants Rudolph Johann Othmar Ernst and Angelika Ernst in the sum of $72, 274.14 plus interest from July 31, 1998, cost and disbursements, i.e. the Legal Fees. The clerk was also

---

[4] Debtors submit that in any event this claim has no basis in fact or law.

directed to enter judgment, *inter alia*,  dismissing plaintiff's claim against defendant Rudi Ernst.
 However, Carey's "<u>claim</u>" for Collection Fees recoverable under the agreement was severed for
an assessment of damages which was to have been conducted on the scheduled trial date. See
Appellants Appendix 2, State Court Decision, p. 4.  Judge Peck also found this aspect of the
DeGrasse opinion to be, at the least, ambiguous and certainly not explicitly a finding of liability
or entry of judgment against Ernst for Collection Fees. See Appellant's Appendix 8- Peck
Opinion p. 19.  Nonetheless, the Court found it could still rule on allowability even if it were a
final decision.  It seems clear, however, that Judge DeGrasse's March 14, 2004 decision did not
grant judgment for the Collection Fees.

By the time the bankruptcy case was filed, shortly after the entry of the State Court
Decision, Carey had allegedly accumulated the sum of $277,667.65  in collection fees and
interest. In his Amended Proof of Claim, Carey claims he is owed $189,979.50 in collection fees,
$15,592.19 in collection disbursements, $37,474 in interest on the Legal Fees judgment and
$34,522.82 in interest for the collection fees claim. See Appelant's Amended Proof of Claim 9-2.

Before there was ever an award of Collection Fees, if he would have been entitled to any
at all, the Appellate Division, First Department ruled that collection fees by an attorney under a
retainer agreement that did not provide a reciprocal right to the client was void as against public
policy and therefore, unenforceable. <u>Ween v. Dow</u>  35 A.D. 3d 58, 802 N.Y.S. 2d 261, 262 (App.
Div. 1st Dept., 2006).

Judge Peck relied on the holding in the <u>Ween v. Dow</u> case which denied enforceability of
 a retainer agreement that, among other provisions, granted the attorney 12% interest
compounded monthly on all fees due, plus it had a right for the attorney to collect his fees,

including his own attorneys' fees in collection on his claim, without a reciprocal right to the

client. Judge Peck specifically found that "There is no disagreement that <u>Ween</u> involved a

retainer agreement containing language that is identical to the agreement at issue in this case

…." See Appellant's Appendix 8, Peck Decision Page 3.

Accordingly, Judge Peck ruled that since Carey's claim was not enforceable under

applicable local law, no evidentiary hearing was necessary and the claim to the extent of the

Collection Fees was disallowed in the bankruptcy case.

## POINT ONE

### THE BANKRUPTCY COURT PROPERLY DETERMINED THE ALLOWABILITY OF APPELLANT'S CLAIM

It cannot be disputed that at the time of the filing of the bankruptcy petition Carey

had an unliquidated claim with respect to his alleged "Collection Fees,"  i.e. the amount of the

claim could not be ascertained by computation or reference to a contract out of which the claim

arose. <u>In re Rhead</u> 179 B.R. 169 (Bankr. D. Ariz. 1995). In fact, Judge DeGrasse specifically

addressed Carey's "claim" for his "Collection Fees" in his decision, to be distinguished from his

explicit grant of a judgment for the Legal Fees. See Appellant's Appendix 2, State Court

Decision P. 4.

Moreover, any claim that Carey may have been entitled to assert was not reduced to

judgment, prior to the filing of the petition, nor was the amount of the alleged fees calculated or

awarded. See <u>In re Drexel Burnham Lambert Group Inc. et al.</u> 148 B.R. 979 (Bankr. S.D.N.Y

1992). As of the date of the filing of the bankruptcy petition no claim for Collection Fees could

have been enforced against the Debtors. As in <u>Drexel</u>, Carey's right to attorney's fees was contingent upon obtaining an award of attorney's fees, which has not occurred. Therefore, the bankruptcy court has the authority to determine the allowability of the claim for his attorney's fees and the court disallowed the claim because it was unenforceable in the subject jurisdiction.

It is the exclusive purview of the Bankruptcy Court to determine the allowability of claims. 28 U.S.C. §157(2)(B). <u>Pepper v. Litton</u> 308 U.S. 295 (1939). Also see, <u>In re Johnson</u> 960 F.2d 396 (4th Cir. 1992).

Even if this were a prior state court judgment, a point which Debtors dispute, the award of legal fees would still be subject to §502(b) of the Bankruptcy Code: "Allowance of Claims and Interests." A bankruptcy court may even look behind the judgment to determine the essential nature of the liability. <u>Pepper v. Litton</u> 308 U.S. at 306. Also see Decision of the Hon. Robert P. Patterson dated November 8, 2005 ( the "Patterson Decision") annexed as Appellant's Appendix 4, Page 5, footnote 4, citing <u>Kohn v. Leavitt</u> 157 B.R. 523, 527( the "Patterson Decision"). "Section 502(b) requires the bankruptcy court to undertake a two-part analysis. First the court must 'determine the amount of [a creditor's] claim as of the date of the filing of the petition....' Then the court must determine how much of the claim should be allowed. Applying the principals of equity inherent in the Code, the court looks behind the judgment to ascertain the relationship between the parties. <u>Id</u>.

Section 502 of the Bankruptcy Code is the guide to the bankruptcy court for determining the allowability of claims. Section 502(b)(1) provides that a claim shall be allowed except to the extent that such claim is not enforceable against the debtor and property of the debtor under any agreement or applicable law. Section 502(b)(1) requires disallowance of the claim if the claim is

unenforceable against the debtor for any reason (such as usury, unconsciounability…) House Report No. 595-595 95th Cong. 1st Sess. 352-354 (1977) See Senate Report No. 95-989, 95th Cong. 2d Sess. 62-5 (1978).

Presented in this case is a clear example of a contract the terms of which are clearly unconscionable and have been so determined by the controlling appellate court.  The Retainer Agreement in this case was determined by the Bankruptcy Court to be precisely like the terms of the retainer agreement in the <u>Ween</u> case, with respect to the issue of "Collection Fees," and that there was no reciprocal right to collection by the client. The applicable law in the district where the underlying action was pending is, clear and definitive in that such agreements are void as against public policy and therefore not enforceable.

It is therefore a matter for the Bankruptcy Court to determine the amount and allowability of the claim, 11 U.S.C. § 502(b)(1), which it did in disallowing the claim and therefore, the decision of the Bankruptcy Court should be upheld.

## <u>POINT TWO</u>

### THE COURT PROPERLY APPLIED THE <u>WEEN</u>  CASE AS APPLICABLE LAW TO DENY APPELLANT'S CLAIM FOR HIS COLLECTION FEES

Section 502(b) of the Bankruptcy Code provides that upon an objection to a filed claim, the Bankruptcy Court shall determine the extent to which a claim shall be allowed. Section 502(b)(1) states that such claim shall be allowed, "except to the extent -- that such claim

is unenforceable against the debtor… under any agreement <u>or applicable law</u>…." See §502(b)(1) of the Bankruptcy Code. Emphasis added.

28 U.S.C. §1652 provides    "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the Court of the United States, in cases where they apply."

The Court is to determine the enforceability of the claim as of the time the court was deciding whether to allow the claim. <u>Groner v. United States ex rel. Snower</u> 73 F.2d 126 (8th Cir. 1934). In <u>Groner</u> the Court ruled, although a decision was correct in view of the law of the state as announced at the time it was entered, it is quite clear that the judgment is erroneous under the two later decisions. <u>Id</u> at p.130  Also see, <u>Kahn v. Schigu</u> (In re Kahn) 201 B.R. 285  (D.C. Kan. 1996) rev'd without Opinion, remanded without opinion 133 F. 3d 932 (10th Cir. 1998).

Accordingly, the law at the time the court is deciding the motion for summary judgment is the law that should be applied

Construction, validity and effect of private contracts are governed by the place where they were made and to be performed. <u>Brine v. Insurance Co.</u> 96 U.S. 627 (1878).

Accordingly, the law in the Appellate Division, First Department for the State of New York is the law that should be applied.

Individual states have a substantial interest in regulating transactions between attorneys and their clients. See <u>Glazer v. J.C. Bradford & Co.</u>, 616 F.2d 167 (5th Cir. 1980). "[W]ith regard to attorney fee arrangements, the [state] courts, as a matter of public policy, give particular scrutiny to the reasonableness of the fee arrangements between attorneys and clients pursuant to their interest in, and statutory power, to regulate the practice of law (<u>King v. Fox</u>, 7 N.Y. 3d 181

(2006); <u>Matter of First National Bank of Islip v. Brower</u> 42 N.Y. 2d 471 (1977)." <u>Ween</u> 822

N.Y.S. 2d at 261. The reasonableness of legal fees is always subject to the review by a court.

<u>Equitable Lumber Corp. v. IPA Land Development Corp.</u> 38 N.Y. 2d 516 (1976).  In general, as

a matter of public policy, courts pay particular attention to fee arrangements between attorneys

and their clients. <u>Bizar Martin v. U.S. Ice Cream Corp.</u> 228 A.D. 2d 588, 644 N.Y.S. 2d 753 (2nd

Dept. 1996); and the reasonableness of attorney's fees is always subject to court scrutiny. See,

<u>Matter of First National Bank of East Islip v. Brower</u>, 42 N.Y.2d 471, 398 N.Y.S. 2d 875 (1977).

The Appellate Division, First Department[5], which is the controlling Department for cases

arising in New York County, recently determined that a retainer agreement which provides a

right to Collection Fees by the attorney, without a reciprocal allowance for attorneys' fees should

the client prevail, to be fundamentally unfair and unreasonable. <u>Ween</u> 822 N.Y.S. 2d at 261, 262.

The appellate court concluded, "such a provision is not entitled to judicial sanction and is,

therefore, unenforceable." <u>Id</u>. at 262.  The First Department, in rendering its decision, quoted Sir

Francis Bacon in saying "[t]he greatest trust between man and man, is the trust of giving counsel.

For in other confidences, men commit parts of their life; their land, their goods, their children,

their credit, some particular affair: But to such, as they make their counselors, they commit the

whole; By how much the more, they are obligated to all faith and integrity." (citations omitted).

<u>Id.</u> at 261.

The Appellate Division made very clear its opinion about agreements of this nature.

---

[5] Interestingly, it is the Appellate Division that is charged with responsibility for overseeing the admission and discipline of attorneys. Its decisions with regard to agreements between attorneys and their client should be considered authoritative.

Consistent with the State's duty to regulate relations between an attorney and his client and insomuch as the decision of the Appellate Division, First Department is binding on cases arising in that department, it is respectfully submitted that this Retainer Agreement, to the extent it seeks Collection Fees, should not be enforced.

In his decision, Judge Peck determined that the Retainer Agreement in this case contained the same provisions which the Appellate Division found objectionable in the Ween case. See Appellant's Exhibit 8, Peck Decision P. 9. It is respectfully submitted, that the only distinction between the two cases is that this case was perhaps a more egregious use of a one-sided retainer agreement.

The decision in Ween is the law in this District and in so much as that case is now closed it can no longer be appealed. See Appellant Appendix 8, Peck Decision, P. 11. Accordingly, until the legislature or the New York Court of Appeals acts to the contrary, this is the applicable law in the First Department, i.e. the applicable local law to this dispute. See §501(b)(1) of the Bankruptcy Code. The Bankruptcy Court found that Ween is definitive and forceful with respect to its ruling that a unilateral right to Collection Fees by an attorney through his retainer agreement is not enforceable in New York County as a matter of public policy. See Appellant's Appendix 8-Peck Decision, P.4.

Judge Peck pointed out the forcefulness of the decision of the Appellate Division in ruling upon this case. The Appellate Division did not restrict its decision only to the facts of the Ween case as argued by Carey. The Appellate Division said, the "very nature of the provision which permits recovery of attorneys' fees without a reciprocal right to the client is, fundamentally unfair, even if not so designed, they have the potential for silencing a client's complaint for fear of retaliation." Ween 822 N.Y.S. 2d at 261. Also See Appellant's Appendix 8-

Peck Decision, p.10. This couldn't be more apropos to this case. Here, no matter what the Debtors did, even if they didn't specifically dispute the issues with regard to the account stated, Carey nonetheless mounted allegation upon allegation, being rebuffed at every stage, still asserting his right to collect his fees for his time.

Yet there are further ethical reasons to support this decision, not just the reason of the potential for an attorney to keep a "captive client" described in the <u>Ween</u> case. The Code of Professional Responsibility EC 2-23 provides that "a lawyer should (1) zealously avoid controversies with clients over legal fees; (2) attempt amicably to resolve differences with clients with respect to fees and (3) not sue clients for fees unless necessary to prevent fraud or gross imposition by them.   In New York State Bar Association Committee on Professional Ethics 400 the panel stated that the legal profession is not a mere "money getting trade." Provisions such as this, and certainly as it was applied in this case, particularly when abused by the lawyer, provide further justification for the decision of the Appellate Division.

The Appellate Division ruled, "That being so, such a provision is not entitled to judicial sanction and is therefore, unenforceable." <u>Id</u>. at 261, 262. Carey's reading of this ruling that it applies only to the underlying facts of that case is just not borne out by the strong, general, policy language used by the court.

Carey justifies his defense by the fact that he was no longer representing Debtors. However, this is not the case because he is still billing them for his time.

The purpose of granting attorneys fees, whether by contract or by statute, is to assure that a recovery is not diminished by legal fees. It is not intended as a profit center. *In re Jones* 83 B.R. 765 (Bankr. Oregon 1988).

This decision is not inconsistent with the treatment of collection fees by an attorney for his own fees in other cases. When legal fees are authorized by statute, a *pro se*, attorney/ plaintiff is not entitled to fees for services he rendered for his own benefit. Kay v. Ehrler 499 U.S. 432 (1991). A *pro se* plaintiff would be deterred from hiring counsel with the knowledge that he could enrich himself by recovering attorney's fees. Dubuono v. Kaplan 193 F.R.D. 117 (S.D.N.Y. 2000).

The overwhelming majority of the U.S. Circuits do not allow attorneys' fees to a party that did not use an attorney. In re Emergency Beacon Corporation 27 B.R. 757, 766 (Bankr. S.D.N.Y. 1983).

In Emergency Beacon Corp. Judge Schwartzberg went on to discuss the observation of another court that self-representation does not foster the detached objective perspective that an attorney can provide as a check against unnecessary or groundless litigation. Emergency Beacon Corp. at p. 767. The point is made crystal clear here where Carey sought to obtain judgment on an oral personal guarantee in contravention to New York State's Statute of Frauds (NYS Gen. Oblig. Law §507-1); seeking to amend a complaint to allege a fraudulent transfer affecting real property in another state; utilizing post judgment collection devices before a judgment is even entered, etc.  See Appellees' Appendix A, Motion for Summary Judgment-Ernst Affidavit ¶ 48.

Accordingly, pursuant to 11 U.S.C. §502(b)(1) and in light of the decision entered in Ween v. Dow, the Bankruptcy Court did not err in granting Debtors' motion for summary judgment and disallowing the claim for Collection Fees.

Judge Patterson recognized that under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure a claimant is not entitled to a hearing upon an objection to claim. The

District Court however determined since Judge Blackshear stated that Carey would have an opportunity to explain the reasonableness of his claim, he should have been given that opportunity. See Appellant's Appendix 4, Patterson Decision pp. 6-7. However, since the claim cannot be allowed under §502(b)(1) of the Bankruptcy Code, as a matter of law, because it is not allowable under applicable local law, there is no purpose in holding such evidentiary hearing.

**POINT THREE**

**APPELLANT RAISES NO ISSUE WHICH SHOULD COMPEL
THIS COURT TO REVERSE THE
DECISION OF THE BANKRUPTCY COURT**

A.      "Appellants argues that a non-reciprocal contract provision that permits an attorney to sue for collection fees is enforceable under New York Law." See Appellant's Point One.

In support of this contention, Appellant cites numerous cases that have allowed attorney's fees when included in a contract. However, the Appellate Division ruled only with respect to an <u>attorney</u> suing his client for his collection fees. Debtors do not dispute that attorney's fees provision in non-reciprocal contract may be permitted, here and elsewhere, however, in this jurisdiction, at this time, the controlling decision states that attorney's fees to an attorney for collecting his own collection costs, without a reciprocal provision for the benefit of the client, is void and unenforceable. Upon information and belief, there have been no rulings contrary to the <u>Ween</u> case by Appellate Division, First Department or the New York Court of Appeals since that time.

In support of his appeal Appellant raises a multitude of cases where attorneys' fees are permitted. However, none of them are applicable to this case. In almost all cases the party was

not an attorney seeking his own collection fees: <u>Aleyska Pipeline Service Co. v. The Wilderness Society</u> 421 U.S. 240 (1975) (Party seeking attorneys fees was an environmental group-not permitted their attorneys' fees); and <u>Hunt v. Sharpe</u> 85 N.Y. 2d 883 (NY 1995) (party seeking attorneys' fees was condominium association-attorney was not a party and fees not allowed); <u>Marjan International Corp. v. Azarian</u> 2000 WL 744120 a 2 (S.D.N.Y. 1999) (case is apparently not published, but based on Appellants note this does not involve an attorney), <u>Krume v. Westpoint Stevens Inc</u>. 79 F. Supp. 297 (S.D.N.Y. 1999) (plaintiff was a participant in a pension fund dispute, not an attorney suing for his own fees); <u>Cutner & Assoc., P.C. v. Kanbar</u> 1998 WL 13849 (S.D.N.Y. January 16, 1998), amended on reconsideration by 1998 WL 104609 (SDNY 1998) amended and superseded by 1998 W: 104612 (S.D.N.Y. February 4, 1998). (This case is not published and certainly not any precedent. This was not a case where the attorney was suing for the collection fees that he billed, for his own services incurred in collecting his legal fee as in <u>Ween</u> and in this case. Rather, it was Mr. Carey who was the attorney for Krume, and Krume was allegedly allowed his attorney's fees. It should be noted that this case came long before <u>Ween</u>. <u>Hrycak v. Kiernan</u> 367 N.J. Super. 237, (NJ Sup. Ct. 2004). This is not a New York case and not precedent in this district.  <u>Industrial Equipment Credit Corp. v. Green</u> 92 A.D. 2d 838 460 N.Y.S. 2d 337 ( App. Div. 1st Dept. 1983) affirmed by 62 N.Y. 2d 903 (NY 1984) (commercial equipment lease, attorney not a party); <u>Levine v. Infidelity, Inc.</u> 2 A.D. 2d 691, 692-693, 770 N.Y.S. 2d 83,84 (App. Div. 2d Dept. 1980) (attorneys' fees sought in relation with the enforcement of a mortgage note-attorney not a party), <u>National Bank of North America v. Arthur R. Smith Mechanical Corp</u>. 74 A.D. 2d 600, 424 N.Y.S. 2d 512 (App. Div. 2d Dept 1980)(attorneys' fees for collection on a guarantee-attorney was not a party); <u>Federal Deposit</u>

Insurance Corp. v. Kassel 72 A.D. 2d 787, 421 N.Y.S. 2d 609, 611 (App. Div. 2d Dept.

1979(action on an equipment lease, attorney not a party).

B.    Appellant argues that it was error for the Bankruptcy Court to rely on Ween as
      disallowing all collection fees as unenforceable per se.


Debtors submit that they have adequately addressed the issues set forth in this point.

Here, Appellant is merely twisting the words of the appellate court. Debtors also argue that the

Appellate Division made it very clear that these provisions, "have the potential for silencing a

client's complaint." (Ween  822 A.D. 2d at 262) The inability for a client to walk away and

absolve itself from additional liability could not have been more clear than in this case where the

Debtors remained as the "captive client" of Mr. Carey. See arguments above.

Carey tries to lead this Court to believe that the Appellate Division made substantial

findings of fact which compelled them to rule upon the clause as a public policy matter.

However, a review of the Appellate Division decision will show that its findings were related to

its decision on Ween's appeal of the denial of his claim for an account stated. In reviewing those

facts, the Appellate Division upheld the decision to deny his motion for summary judgment on

an account stated based on the questions of fact raised by the client's complaint about the

representation. This, it is respectfully submitted, did not bear at all upon its decision on the

collection fees. The Court in Ween stated that these matters of  the client's complaints to the

attorney "raise[d] issues of fact as to whether her partial payments, and her retention of invoices,

were in fact, acquiescence of their correctness." i.e. the issue concerning an account stated.

Ween  822 N.Y.S. 2d at 259, 260. The Ween Court did not mention these issues about the

attorney's conduct in reaching its decision that the "very nature of the provision" of the

collection fees portion was void as against public policy.

C.    Appellant argues that the Bankruptcy Court erred in finding that *res judicata* did not bar debtors' motion for summary judgment. See Appellant's Point II.

As stated above, the bankruptcy court is directed to allow or disallow claims in accordance with section 502(b) of the Bankruptcy Code. The Bankruptcy Court examined the State Court Decision and noted the ambiguity of the decision with respect to the "Collection Fees." Appellants Appendix Exhibit 8, See Peck Decision. Moreover, the Court found that even if there was a finding with respect to liability, the Court would still be required to review the claim with respect to allowability and would have to apply the provisions of Section 502(B)(1) of the Bankruptcy Code which would have directed it to the Ween case.

Nonetheless, Debtors argued that the Ween case would have to be applied in any event. Carey makes a point that the Debtors never appealed the decision of Judge DeGrasse with respect to the Collection Fees. Debtors submit that their time to appeal or otherwise move under CPLR 5513 or move for reconsideration under CPLR 2221 never began to run. CPLR 2221(e) permits reargument if there was a change in law that would change the prior determination.

In his response to the motion for summary judgment, Carey stated that he filed the Notice of Entry in the State Court, which would start the clock for the parties to appeal the decision, on April 20, 2004. The automatic stay became effective with the filing of the bankruptcy petition on April 5, 2004. The effect of the filing is that all proceedings, including, but not limited to any right to appeal, or to take any action to start that process, is stayed, i.e. frozen in time.

In State Court, the time to appeal under CPLR §5513 and to move to reargue or for reconsideration under CPLR 2221, does not begin to run until the filing of a Notice of Entry of Judgment. The party then has thirty (30) days to appeal or so move.

The service and filing of a Notice of Entry is not a ministerial act taken by the clerk of the court in entering the judgment after a pre-petition determination by a judge, See Rexnord

Holdings Inc. v. Bidermann 21 F.3d 522 (2d Cir. 1994) . In the State Court, it requires an affirmative act by a creditor and such action is therefore a violation of the stay.

It has been said that a motion to reconsider or reargue for the purpose of raising a change in the governing law can not be used to extend the time to appeal, but if the appeal time is still alive, or if an appeal has been duly taken but not yet submitted, so that a motion to reargue cannot be seen as trying to extend the time to appeal, a motion may be made to the deciding judge, without forcing the appeal through.  See William H. Van Vleck Inc. v. Klein  50 Misc 2d. 622 (1966). CPLR 2221

Since the serving and filing of the Notice of Entry by the claimant on April 20, 2004 was a violation of the automatic stay, such act is therefore void. See In re 48th Street Steakhouse, 835 F. 2d 427 (2d Cir. 1987) *cert denied* 485 U.S. 1035 (1988) where the court ruled that actions by a creditor in violation of the automatic stay are void. Also see 2 L. King, Collier on Bankruptcy §362.11 (15th Ed. 1987).

An appeal is indisputably a continuation of a judicial action or proceeding contemplated by §362(a). See Cathey v. Johns-Manville Sales Corp.  71 F. 2d 60, 62 (6th Cir. 1983) also cited in Commerzanstalt below.

The automatic stay also applies to time limits related to appeals.  See Local Union 38 Sheet Metal Workers' International Association v. Custom Air Systems. 333 F. 3d 345 (2d Cir. 2003). In Sheet Metal the appellant filed a notice of appeal after the expiration of the time to appeal under State law but within the extended time under §108(b) which gives the trustee and a debtor in possession, including a debtor in Chapter 13, [see §1306(b)] additional time to take action with respect to any time limits under applicable nonbankruptcy law. The court ruled that the time period for filing a Notice of Appeal  was a "period" established under "applicable

nonbankruptcy law" and that the statutes "sweeping" reference to the "filing" of "any pleading etc." includes the filing of a notice of appeal. Here §108 is inapplicable because the time never started to run under applicable non-bankruptcy law and the trustee was never given notice.

Notwithstanding arguments to the contrary by Appellant, the automatic stay operates in favor of the debtor, in this case. Appellant argued that an appeal by Debtors would have been like an action commenced by a debtor which is not subject to the automatic stay. However, a determination of whether the stay applies is made by examining the debtor's status at the time the proceedings were initiated, i.e. as a defendant in a collection action by a creditor, and not by looking to which party has appealed. See Commerzanstalt v. Telewide Systems, Inc. 790 F. 2d 206 (2d Cir. 1986). Which also cited and acknowledged Association of St. Croix Condominium Owners v. St. Croix Hotel, et al. 682 F. 2d 446 (3d Cir. 1982).

Properly, claimant should have obtained relief from the automatic stay for permission to file the Note of Entry then served the debtors and the trustee, who has standing to contest legal fees, [See In re Scarboro 13 B.R. 439 (Mid. Distr. GA 1987)] and only then would the time to appeal begin to run with both sides not being subject to the automatic stay. Then, the debtors or the trustee would have the right to appeal or to take any action, including the possibility of moving for reconsideration by the State Court, which even now would have to apply the Ween case.

Nonetheless, the Bankruptcy Court was already required to determine what portion of the Collection Fees, if any, were allowable, independent of what occurred in the State Court and it applied applicable non-bankruptcy law which today is the Ween case, which directs that since such collection fees are against public policy, they are not entitled to legal sanction and thus unenforceable.

## CONCLUSION

For the reasons stated herein and upon record of the Bankruptcy Court below, Debtors/Appellees respectfully request that the appeal be denied, together with such other and further judgment as this Court deems just and proper.

Dated: New York New York
      July 31, 2007

                                   **LAW OFFICE OF JOSEPH L. FOX**
                                   *Attorneys for Rudolf J.O. Ernst*
                                     *and Angelika Ernst, Debtors/Appellees*
                                   60 East 42nd Street, Suite 2231
                                   New York, New York 10165
                                   (212) 949-8300

                                   By:     s/ <u>Joseph L. Fox</u>
                                        Joseph L. Fox, Esq. (JF2313)

To:
      Carey & Associates
      521 Fifth Avenue, Suite 3300
      New York, New York 10175-3399

      Jeffrey L. Sapir, Chapter 13 Trustee
      399 Knollwood Road, Suite 102
      White Plains, New York 10603