```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
In re:                                 Chapter 13

RUDOLF J.O. ERNST and ANGELIKA L.      BKR Case No. 04-12291 (JMP)
ERNST,

                          Debtors.     Docket No.: 07-cv-04840 (JGK)
--------------------------------------X
```

**APPELLANT'S REPLY BRIEF**

```
                    CAREY & ASSOCIATES LLC
                    Attorneys for Michael Q. Carey,
                    d/b/a Carey & Associates
                    521 Fifth Avenue, Suite 3300
                    New York, NY 10175-3399
                    Tel: 212-758-0076
                    Fax: 212-758-0069
```

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................... II
  A.   CASES ......................................................... II
  B.   STATUTES ...................................................... II
PRELIMINARY STATEMENT ................................................ 1
STATEMENT OF DEBTORS' UNFOUNDED ALLEGATIONS .......................... 1
ARGUMENT ............................................................. 5
POINT I .............................................................. 5
THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT CAREY'S COLLECTION
FEES CLAUSE WAS UNENFORCEABLE ........................................ 5
  A.   DEBTORS HAVE FAILED TO DISPROVE THAT <u>WEEN</u> AND THE CASES
      RELIED UPON BY THE APPELLATE DIVISION ARE SUI GENERIS ........ 5
  B.   CAREY'S COLLECTION FEES ARE PAYABLE AS A MATTER OF
      CONTRACT ..................................................... 7
POINT II ............................................................. 9
THE COURT ERRED IN FINDING THAT *RES JUDICATA* DID NOT BAR
DEBTORS' MOTION FOR SUMMARY JUDGMENT ................................. 9
  A.   THE SUPREME COURT DECISION WAS FINAL ......................... 9
  B.   DEBTORS HAVE OFFERED NO RECOGNIZED EXCEPTION TO JUSTIFY
      THE BANKRUPTCY COURT DECISION TO DISREGARD THE COLLECTION
      JUDGMENT ON LIABILITY ....................................... 10
CONCLUSION .......................................................... 14

**TABLE OF AUTHORITIES**

**A.   CASES**

BELMONT V. ASSOCIATES NAT. BANK (DELAWARE), 119 F.SUPP.2D 149 (E.D.N.Y. 2000) ........................................................ 8n3

CUTNER & ASSOCIATES, P.C.V. MAURICE S. KANBAR, 1998 WL 104612 (S.D.N.Y. FEBRUARY 4, 1998) (NOT REPORTED IN F.SUPP.) ...... 8n2

DUBUONO V. KAPLAN [SIC], 193 F.R.D. 117 (S.D.N.Y. 2000) ......... 8n3

IN RE EMERGENCY BEACON CORP., 27 B.R. 757 (BANKR. S.D.N.Y. 1983) ................................................................. 8n3

KAY V. EHRLER, 111 S.CT. 1435 (1991) ............................ 8n3

PEPPER V. LITTON, 308 U.S. 295 (1939) ......................... 10-14

**B.   STATUTES**

**PRELIMINARY STATEMENT**

Creditor Michael Q. Carey, d/b/a Carey & Associates ("**Carey**"), submits this Reply Brief in response to Appellee's Memorandum of Law, dated July 31, 2007.[1]

**STATEMENT OF DEBTORS' UNFOUNDED ALLEGATIONS**

Under the titles Preliminary Statement and Statement of the Case, and in their Argument, without a good faith basis to do so, debtors have made claims that cannot be considered findings of fact. Debtors' claims raise issues concerning, and they continue to disparage, Carey's integrity and professionalism. Certain of the claims were decided against them, or were never raised, in the New York State Supreme Court or Bankruptcy Court. Each of the claims, made without basis, is so serious that Carey affirmatively sought, for over three years in the Bankruptcy Court, and continues to pursue, an opportunity to have the following and other issues resolved at a hearing. Debtors and their attorney have consistently pressed their misleading

---

[1] Citations preceded by "**Carey Br**" refer to the pages of Appellant's Brief, dated July 9, 2007.
  Citations preceded by "**Collection Judgment**" refer to that portion of the decision of the Supreme Court that awarded summary judgment finding Debtors liable to Carey for his Collection Fees.
  Citations preceded by "**Ernst Motion**" refer to debtors' Motion for Summary Judgment, by Notice of Motion dated January 17, 2007.
  Citations preceded by "**MSJ Order**" refer to the decision of the Bankruptcy Court (Hon. James M. Peck), dated April 27, 2007, granting debtors' motion for summary judgment. (Appx Ex 8).
  Citations preceded by "**Opp Memo**" refer to Appellees' Memorandum of Law dated July 31, 2007.
  Defined terms not defined in this Reply Brief have the same meanings as used in Appellant's Brief, dated July 9, 2007.

version of the facts while, with equal vigor, seeking to avoid a hearing that would resolve their allegations.

The following matters should be resolved at a hearing:

a) Debtors exclaim that "[i]t can be observed that Judge Peck and Judge Blackshear before him, were truly repulsed by the use of the Retainer Agreement by Carey in ratcheting up fees against his "captive client". (Opp Memo p 6). Debtors cite no authority for such baseless conclusions. Neither bankruptcy judge made such findings. Hon. Cornelius Blackshear did not even include such findings among those that were reversed on appeal.

b) Debtors attack the retainer agreement between Carey and debtors as "effectively overbearing and overreaching". (Opp Memo p 2). They do so without mention that the Supreme Court awarded judgment to Carey in all respects based on that same retainer agreement, and that the award of fees charged for representing Dr. Rudolf Ernst in the extradition proceeding and affirmed by the Bankruptcy Court included the full amount sought by Carey.

c) Debtors claim that they "were stuck as "captive clients". (Opp Memo p 2). No court has made any such finding and debtors know that Carey only represented Dr. Ernst until the court granted the extradition request.

d) Debtors argue that Carey "started his collection action even before he was relieved as counsel; thus escalating the fees without any opportunity for debtors to terminate the relationship." (Opp Memo p 3, accord p 5). Debtors do not explain how Carey's suit escalated his fees or prevented debtors from terminating a relationship the scope of which ended with the extradition order. Debtors know that before Carey commenced his action, i) Carey was not "relieved" as counsel; he sought, and was later granted, leave of Court to withdraw as counsel for non-payment of his fees, ii) the extradition hearing was closed when the Court ordered the extradition of Dr. Ernst, and iii) debtors had retained counsel to pursue a Habeus Corpus petition on behalf of Dr. Ernst. (Carey Br n 10).

- 2 -

e)  Debtors continue to highlight their "shock" that, after six years, the judgment granted by the Supreme Court was merely an award limited to Carey's claim on an account stated. (Opp Memo p 3, accord p 7). Their trademark description of Carey's case seeks to convince the Court that Carey's fees are unreasonable because he immediately should have moved to obtain summary judgment on a simple account stated claim, rather than pursue the case as he did.

Debtors and their attorney seek to leave the impression that Carey followed this course, and "escalated" (Opp Memo p 2) or "ratcheted up" (Opp Memo p 6) his Collection Fees against a "captive [former] client" (Opp Memo p 2, p 6) over six years, in order to make a "profit". (See Opp Memo p 15). Carey pursued the case to win judgment dismissing debtors' baseless charges and thereby protect his professional reputation, not to make a "profit."

Debtors' argument, repeated at every stage in the Bankruptcy Court (see e.g. Opp Memo p 7) but never raised in the Supreme Court, fails to acknowledge that Carey had no good faith basis to move for summary judgment on an account stated claim or on Carey's contract claim before he disproved through discovery debtors' baseless claims that Carey committed malpractice and breached his fiduciary duties. (Cf. Appx Ex 10: Ween Order p 5-6; Carey Br p 8).

Debtors' account stated argument also presumes that debtors would not have opposed the motion on that basis as vigorously as they have every other step Carey has taken to bring this matter to a close, including their constant opposition to Carey's attempts to set a reasonable schedule to conclude the hearing on his fee application.

Part of the Carey Judgment was based on breach of contract, but debtors never concede that part of the Supreme Court's holding. Debtors know that Carey's claim to Collection Fees is based solely on contract, and could not be awarded pursuant to an account stated theory. Thus, even if the court awarded partial summary judgment on an account stated claim early in the proceedings (a highly unlikely result given debtors' serious charges against Carey), the case would have continued through the same steps that led to the award in Carey's favor on the account stated

- 3 -

and contract claims, and that dismissed debtors' baseless charges.

f) Debtors continue to complain about bail applications and appeals taken by Carey in representing Dr. Ernst in the extradition proceeding. (Opp Memo p 5). They do not deny that the Supreme Court rejected those complaints. Debtors also fail to record that their counsel for the *Habeus Corpus* petition relied on Carey's arguments made during the extradition hearing, including at the time of the bail applications and appeals, and incorporated most if not all of them as the basis of Dr. Ernst's argument.

g) One of debtors' shibboleths is that Carey charged 12% interest while the case lay dormant for two years. (Opp Memo p 6). The Statement of the Case neglects to mention that Judge Blackshear approved Carey's application for interest for the entire period preceding the Supreme Court judgment, merely reducing the interest rate from compound 12% to simple 9%.

h) Debtors would like the Court to believe that Carey "is still billing [debtors] for his time", making debtors a "profit center." (See Opp Memo p 15). The automatic stay that became effective upon debtors filing the petition prevented Carey from taking any such action.

i) Debtors claim that they "presented to the court below, in most cases, the collection efforts were unnecessary, inappropriate, and often frivolous." (Opp memo p 6; accord p 7). Carey concedes that debtors "presented" such allegations in a response to interrogatories, dated December 22, 2006. The response was later made an exhibit to the Ernst Motion and thereby "presented" to the Bankruptcy Court. Since Carey's claim for fees, and debtors' claim that they should be denied as "unnecessary, inappropriate, and often frivolous" created the overriding material question of fact that required a hearing, debtors never sought a resolution of such claims in the Ernst Motion. The 22 page exhibit that identified virtually every time charge by Carey as objectionable had no place in the Ernst Motion. Debtors' suggestion that such claims were "presented" to the court for its consideration is misleading since the Ernst Motion was expressly based solely on the question of law allegedly decided in Ween (Appx Ex 5 p 2) and was not identified by the Court as a component considered on the motion. Like the statements above that have no

- 4 -

place on this appeal, the exhibit was "presented" as part of an attempt to unjustly poison the Court's view of Carey's professional conduct.

**ARGUMENT**

**POINT I**

**THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT CAREY'S COLLECTION FEES CLAUSE WAS UNENFORCEABLE**

**A.   DEBTORS HAVE FAILED TO DISPROVE THAT <u>WEEN</u> AND THE CASES RELIED UPON BY THE APPELLATE DIVISION ARE SUI GENERIS**

Carey argued in Appellant's Brief that <u>Ween v. Dow</u> and the cases relied upon in <u>Ween</u> were *sui generis* because each relied not only on language in a retainer agreement, but also on findings of attorney misconduct. (Carey Br p 12-28). Here, Carey concedes the presence of the first factor, the express terms of his retainer agreement. However, debtors have failed to discuss the second factor. (<u>See</u> Opp Memo p 19). In <u>Ween</u> and the other cases cited in Carey's brief, where the court found the non-reciprocal or other attorney fee clause unenforceable, the courts had findings that supported the conclusion that there was attorney misconduct. Here, the Bankruptcy Court failed to make any finding of misconduct by Carey. Debtors intentionally disregard the findings of misconduct that are present in <u>Ween</u> and in every case relied upon by <u>Ween</u>. They argue that such facts in <u>Ween</u> "did not bear at all upon its decision on the collection fees." (Opp Memo p 19).

Debtors concede the Bankruptcy Court ruled as a matter of

- 5 -

law, relying exclusively on Ween (Opp Memo p 9, 14). They do not cite any findings made by the Bankruptcy Court except the obvious, that Judge Peck concluded that the non-reciprocal attorney fee clause in Ween was materially the same as that used by Carey.

Acknowledging that the facts of each case are the foundation for Carey's argument in Point I of Appellant's Brief (Opp Memo p 15: "Carey's reading of this ruling…."), debtors nevertheless fully ignore the findings made by the Supreme Court and the Appellate Division that Ween misrepresented the law to his client, among other misdeeds.

In an apparent concession to the absence of any such finding concerning Carey and despite the Supreme Court judgment that debtors' claims of misconduct against Carey had no basis in fact, debtors have argued as fact their speculative and conclusory allegations and theories. (Statement of Debtors' Unfounded Allegations, p 1-5, *supra*). In every instance, debtors have couched their speculation in terms to make it appear that they have satisfied the attorney misconduct element. The Ernst Motion was, as noted above, expressly based on the Ween decision, not the facts debtors allege but have never proved against Carey. Since the bankruptcy Court never found facts to satisfy the element of misconduct, it should be reversed.

**B.   CAREY'S COLLECTION FEES ARE PAYABLE AS A MATTER OF CONTRACT**

Collection fees are payable if the retainer agreement provides for them. (Carey Br p 10-12).

The Bankruptcy Court did not address Carey's argument that under New York law, an attorney *pro se* may recover contractual collection fees.

Debtors argue that most of the cases cited by Carey are distinguishable because the plaintiff was typically not an attorney. (Opp Memo p 17-19). The observation is correct but debtors have not offered any meaningful basis to reject such cases as authority for Carey's argument. The common element between such cases and this case is the enforceability of a non-reciprocal attorneys' fee clause for the benefit of the plaintiff. Debtors do not claim that, merely because the plaintiff was not an attorney, attorneys' fees in such cases would not be subject to the same review by the courts as given to fees claimed by a pro-se attorney. Debtors neither distinguish the contracts in the non-attorney cases from those where the attorney was the plaintiff nor do they suggest any public or other policy ground for treating any such case

differently than this matter.[2]

Debtors also argue that Carey is not entitled to attorneys' fees as a *pro se* litigant. (Opp Memo p. 16). That issue is not present on this appeal. The Bankruptcy Court did not deny Carey's claim on that theory. In any event, none of the cases that debtors cite supports their argument.[3]

---

[2]   Debtors err in their claim that Cutner "was not a case where the attorney was suing for the collection fees that he billed, for his own services incurred in collecting his legal fee as in Ween and in this case." (Opp Memo p 18). In Cutner, both Cutner and his attorney, Carey, sought and received an award of collection fees. Cutner & Associates, P.C.v. Maurice S. Kanbar, 1998 WL 104612 at *5 (S.D.N.Y. February 4, 1998) (Not Reported in F.Supp.).

Debtors have also transposed some names of cases. The following phrase: "Rather, it was Mr. Carey who was the attorney for Krume, and Krume…" (Opp Memo p 18) should have read: "Rather, it was Mr. Carey who was the attorney for Cutner, and Cutner…"

[3]   Debtors expressly agreed in Carey's retainer agreement to pay Carey for his efforts *pro se* or to pay an attorney he hired to collect the fees owed by debtors.(Carey Br p 10 n 6).

Attorneys' fees are generally awarded to a prevailing party if expressly provided for by contract. (Carey Br p 11-12).

In the first case cited by debtors, Kay v. Ehrler, 111 S.Ct. 1435 (1991) (Opp Memo p 16), the court denied a *pro se* attorney fees for representing himself under 42 U.S.C. § 1988. Kay and other cases on the same subject do not prohibit fees claimed pursuant to contract.

Such cases, including the second case relied upon by debtors, Dubuono v. Kaplan [sic], 193 F.R.D. 117 (S.D.N.Y. 2000) (Opp Memo p 16), prohibit statutory attorneys' fees to a *pro se* attorney. See also Belmont v. Associates Nat. Bank (Delaware), 119 F.Supp.2d 149, 166 (E.D.N.Y. 2000).

In debtors' last case, In re Emergency Beacon Corp., 27 B.R. 757 (Bankr. S.D.N.Y. 1983) (Opp Memo p 16), the court denied attorneys' fees under the statutory exception to the American Rule to a *pro se* non-attorney. Beacon tracks the majority of U.S. Circuit court cases involving matters where statutory attorneys' fees could be awarded but were denied to non-attorneys who did not use the services of an attorney during litigation. Beacon, 27 B.R. at 766-767.

Lastly, the issues of fact and law that debtors cite, related for example to the Statute of Frauds and fraudulent conveyances of property in Virginia (Opp Memo p 16), were not addressed in the MSJ Order and await the hearing that Carey has been granted.

**POINT II**

**THE COURT ERRED IN FINDING THAT *RES JUDICATA* DID NOT BAR DEBTORS' MOTION FOR SUMMARY JUDGMENT**

**A.   THE SUPREME COURT DECISION WAS FINAL**

Carey presented four circumstances that established the finality of the Supreme Court Decision. (Carey Br p 29-30). Debtors' Opposition Memo does not address the factual basis for the argument, omitting even to challenge that the Supreme Court decision was final since debtors failed to raise the unenforceability of the attorney fee clause in the Supreme Court or in the District Court on the appeal to Hon. Robert P. Patterson, Jr. (See Opp Memo p 20-23).

The Bankruptcy Court found that debtors did not challenge the enforceability of the clause in the Supreme Court:

> The state court also denied a claim by Ernst that he should be entitled under the retainer agreement to recover his own collection fees against Carey. This is an indication that the court paid close attention to the provision relating to collection fees and that Ernst sought to benefit from the language and did not otherwise challenge the validity of the provision. Although the state court does not analyze the enforceability of the provision, the severing of the claim for an assessment of damages appears to be predicated on the premise that the collection fee provision is enforceable.

(MSJ Order: Appx Ex 8, p 20 n 17).

Debtors' failure to raise the issue of enforceability before the Supreme Court and thereby preserve it for appeal made

- 9 -

the Collection Judgment final. Since debtors failed to preserve the issue, *res judicata* barred them from raising it for the first time on the Ernst Motion. (See Carey Br p 28-30).

The bar against debtors raising the issue now or in the future renders irrelevant their lengthy argument that the time to appeal the enforceability of Carey's retainer agreement has not begun to run. (Opp Memo p 20-23).[4]

**B.   DEBTORS HAVE OFFERED NO RECOGNIZED EXCEPTION TO JUSTIFY THE BANKRUPTCY COURT DECISION TO DISREGARD THE COLLECTION JUDGMENT ON LIABILITY**

Debtors make the general statement of law that a "bankruptcy court my even look behind the judgment to determine the essential nature of the liability. Pepper v. Litton…." (Opp Memo p 10). The Bankruptcy Court can do so "for the purposes of proof and allowance." Pepper v. Litton, 308 U.S. 295, 305-306 (1939). Although debtors did not expressly argue that Pepper gave the Bankruptcy Court authority to overlook the Collection Judgment and rule on the basis of Ween, nevertheless we deem that to be debtors' purpose in citing Pepper.

The Bankruptcy Court has the authority to disregard a judgment obtained by a creditor from a state court where the Bankruptcy Court makes detailed findings, amply supported by the

---

[4]   Debtors' focus on the efficacy of Carey's Notice of Entry of the Collection Judgment in view of the automatic stay (Opp Memo p 20-22) is misplaced on this appeal. Debtors expressly acknowledge that Carey made that argument in opposition to the Ernst Motion. (Opp Memo p 20; see p 22). Debtors have apparently overlooked that Carey did not raise that issue on this appeal.

evidence, that the judgment was part of a scheme to defraud other creditors. Pepper, 308 U.S. at 296. Here, the Bankruptcy Court did not find that the foundation of Carey's Collection Judgment was suspect at the time the petition was filed.[5]

In Pepper, the defendant Litton caused his wholly owned corporation, Dixie Splint Coal Company (**"Dixie"**), through the secretary-treasurer of the corporation, to confess judgment for an amount in excess of $33,000 in favor of Litton individually (**"Litton Judgment"**). The court found that Litton, as one of several steps in a scheme to defraud a creditor, obtained the judgment intending to use it as a shield against Dixie's $9,000 debt to Pepper. Pepper, 308 U.S. at 297. In another step, Litton caused Dixie to file a voluntary petition in bankruptcy for the sole purpose of avoiding payment of the Pepper debt. Pepper, 308 U.S. at 298.

Prior to the bankruptcy court making the findings above, Pepper instituted a state court proceeding to set aside the Litton Judgment. (**"Suit #1"**).

Two days later, the sheriff instituted the action that Litton argued was *res judicata*. The sheriff commenced an

---

[5] The Appellate Division decision in Ween did not become final until approximately three years after debtors filed the petition. To deny Carey's fee application as a matter of law based on Ween, the Bankruptcy Court disregarded its own conclusion that the Collection Judgment was a final decision that debtors were liable for Carey's collection fees and that debtors failed to raise in the Supreme Court the enforceability of Carey's Retainer Agreement.

-11-

interpleader action joining Litton, Pepper and a creditor of Dixie. ("**Suit #2**"). Pepper consented to paying the other creditor because it had a prior claim against Dixie in the amount of approximately $2,200.

The bankruptcy trustee for Dixie moved in state court to set aside the Litton Judgment. ("**Suit #3**"). The state court ruled that the trustee was estopped to challenge the Litton Judgment because Pepper, despite having done so without prejudice to later moving to set it aside, recognized the validity of the Litton Judgment in Suit #2. The court said the consent in the sheriff's case estopped Pepper and the Trustee from setting the judgment aside. Pepper, 308 U.S. at 299-300.

The bankruptcy court heard the question of the allowance of the Litton Judgment on the exceptions previously made by Pepper. The court concluded that the state court decision based on estoppel did not prevent it from considering the validity of the Litton Judgment. Pepper, 308 U.S. at 301.

The bankruptcy court made a number of negative findings concerning the Litton Judgment: the actions were an attempt to avoid a just debt, Litton and Dixie were the same, and the salary claim was not an honest debt of Dixie to Litton. On that basis, in part, the district court disallowed the Litton claim. Pepper, 308 U.S. at 301-302.

The circuit court reversed the district court and held that

-12-

the state court decision was *res judicata* in the bankruptcy proceedings. <u>Pepper</u>, 308 U.S. at 302.

The U.S. Supreme Court reversed and affirmed the district court. <u>Pepper</u>, 308 U.S. at 313. It stated that *res judicata* did not prevent the district court from examining into the Litton Judgment since Litton did not show that the judgment in the state court was conclusive in his favor on the validity of the underlying claim. It was not conclusive since that issue was not before the state court. <u>Pepper</u>, 308 U.S. at 302.

> [T]he bankruptcy trustee may collaterally attack a judgment offered as a claim against the estate for the purpose of showing that it was obtained by collusion of the parties or is founded upon no real debt.

<u>Pepper</u>, 308 U.S. at 306, 306 n 13.

Here, the issue of the enforceability of Carey's non-reciprocal attorneys' fee clause was before the Supreme Court, and Debtors had the opportunity to challenge the clause but chose not to do so.

The New York Supreme Court awarded summary judgment to Carey on his contract claim underlying the Collection Judgment and found no evidence of wrongdoing by Carey. Since debtors did not question the enforceability of Carey's attorneys' fee clause on which the state awarded summary judgment, debtors are barred by *res judicata* from attacking the Collection Judgment in the

-13-

Ernst Motion. <u>See</u> <u>Pepper</u>, 308 U.S. at 303, 303 n 6.

Debtors have not taken issue with Carey's arguments that:

a) The Bankruptcy Court misread <u>Ween</u> (Carey Br p 14-19;

b) The Bankruptcy Court erred in failing to address Carey's claim for fees as *sui generis* (Carey Bt p 25-28);

c) The Bankruptcy Court erred in its application of § 502(b) (Carey Br p 33-36); and

d) The Bankruptcy Court erred in finding that Judge Blackshear's denial of Carey's claim was the law of the case (Carey Br p 37-39).

## CONCLUSION

The Court should reverse the decision of the Bankruptcy Court and remand the case for proceedings consistent with the Patterson Decision.

Dated:  New York, New York
        August 10, 2007

                                Respectfully,

                                CAREY & ASSOCIATES LLC


                                By: /s/ MICHAEL Q. CAREY
                                    Michael Q. Carey (MC 1802)
                                Attorneys for Appellant
                                521 Fifth Avenue, Suite 3300
                                New York, NY 10175-3399
                                Tel: 212-758-0076
                                Fax: 212-758-0069